UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

                                    Plaintiff,

            – against –

DIPIZIO CONSTRUCTION COMPANY, INC.,
BOEHMER TRANSPORTATION CORP.,
GREAT LAKES CONCRETE PRODUCTS, LLC,
BERNARD DIPIZIO and LAURICE BOEHMER,

                                   Defendants.

-----------------------------------------------------------------x

CIVIL ACTION NO.:
1:14-CV-576A

AMENDED
COMPLAINT

Plaintiff Travelers Casualty and Surety Company of America ("Travelers"), by its

undersigned attorneys, alleges, for its amended complaint in the above-entitled action, as

follows:

### Parties and Jurisdiction

1.     Travelers is a corporation formed and existing under the laws of the State of

Connecticut, having its principal place of business at One Tower Square, Hartford, CT

06183.

2.     Upon information and belief, defendant DiPizio Construction Company, Inc.

("DiPizio") is a New York corporation, whose principal place of business is at

100 Stradtman Street, Cheektowaga, NY 14206.

3.     Upon information and belief, defendant Boehmer Transportation Corp.

("Boehmer Corp.") is a New York corporation, whose principal place of business is at

3512 Union Street, Machias, NY 14101.

4.     Upon information and belief, defendant Great Lakes Concrete Products, LLC ("Great Lakes") is a New York limited liability company, whose principal place of business is at 5690 Camp Road, Hamburg, NY 14075, and whose members are all citizens of the State of New York.

5.     Upon information and belief, Great Lakes' members are defendant Bernard DiPizio and/or defendant Laurice Boehmer.

6.     Upon information and belief, defendant Bernard DiPizio is a citizen of the State of New York, residing at 999 Borden Road, Depew, NY 14043.

7.     Upon information and belief, defendant Laurice Boehmer is a citizen of the State of New York, residing at 3512 Union Street, Machias, NY 14101.

8.     Upon information and belief, none of the defendants is a citizen of, or was incorporated in, or has a principal place of business in, or has a member who is a citizen of, the State of Connecticut.

9.     The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 (diversity of citizenship).

The General Agreement of Indemnity

11.     On October 17, 2003, defendant DiPizio signed the General Agreement of Indemnity of which the document annexed hereto as "Exhibit 1" is a true copy.

12.     On October 17, 2003, defendant Boehmer Corp. signed the General Agreement of Indemnity of which the document annexed hereto as "Exhibit 1" is a true copy.

2

13.     On October 17, 2003, defendant Bernard DiPizio signed the General Agreement of Indemnity of which the document annexed hereto as "Exhibit 1" is a true copy.

14.     On October 17, 2003, defendant Laurice Boehmer signed the General Agreement of Indemnity of which the document annexed hereto as "Exhibit 1" is a true copy.

15.     On September 13, 2007, defendant Great Lakes signed the Travelers Casualty and Surety Company of America General Agreement of Indemnity Additional Indemnitor Rider of which the document annexed hereto as "Exhibit 2" is a true copy.

16.     The General Agreement of Indemnity to which reference is made in such document annexed hereto as "Exhibit 2" is the document of which a true copy is annexed hereto as "Exhibit 1".

<u>Bonds Issued Pursuant to the Indemnity Agreement</u>

17.     Travelers, as surety, and DiPizio, as principal, signed a performance bond and a related labor and material payment bond, each bearing Bond No. 105594546, relating to a public improvement contract that was entered into by and between DiPizio and State of New York Department of Transportation (referred to herein as the "Erie & Niagara D262047 Project").

18.     Travelers, as surety, and DiPizio, as principal, signed a performance bond and a related labor and material payment bond, each bearing Bond No. 105809269, relating to a public improvement contract that was entered into by and between DiPizio and Erie County, New York (referred to herein as the "Erie County 2013 Capital Overlay Project").

19.     Travelers, as surety, and DiPizio, as principal, signed a performance bond and a related labor and material payment bond, each bearing Bond No. 105135961, relating to a

public improvement contract that was entered into by and between DiPizio and State of New York, Department of Transportation (referred to herein as the "Niagara County D261076 Project").

20.    Travelers, as surety, and DiPizio, as principal, signed a performance bond and a related labor and material payment bond, each bearing Bond No. 105594405, relating to a public improvement contract that was entered into by and between DiPizio and Erie Canal Harbor Development Corporation ("ECHDC") (referred to herein as the "Inner Harbor Project").

21.    Travelers, as surety, and DiPizio, as principal, signed a performance bond and a related labor and material payment bond, each bearing Bond No. 105809035, relating to a public improvement contract that was entered into by and between DiPizio and the Seneca Buffalo Creek Casino Off Site Utilities (referred to herein as the "Seneca Creek Casino Project").

22.    Travelers, as surety, and DiPizio, as principal, signed a performance bond and a related labor and material payment bond, each bearing Bond No. 105809279, relating to a public improvement contract that was entered into by and between DiPizio and the City of North Tonawanda, New York for the Meadow Drive Extension (referred to herein as the "Meadow Drive Extension Project").

23.    Travelers, as surety, and DiPizio, as principal, signed a performance bond and a related labor and material payment bond, each bearing Bond No. 105809189, relating to a public improvement contract that was entered into by and between DiPizio and the Town of West Seneca (referred to herein as the "2013 Road Reconstruction Project").

4

24.     Each of the aforesaid contracts is a "Contract" within the meaning of that term as that term is defined in paragraph "1" of the aforesaid General Agreement of Indemnity.

25.     The aforesaid performance bonds and payment bonds are "Bonds" within the meaning of that term as that term is defined in the "WHEREAS" clause on the first page of the aforesaid General Agreement of Indemnity.

Indemnity Agreement Provisions

26.     Such General Agreement of Indemnity states in part:

> 2.     Default:   Any of the following shall constitute a Default:
> (a) a declaration of Contract default by the obligee or entity for whom a Contract is performed; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract;(e) the Company's good faith establishment of a reserve;
> (f) improper diversion of Contract funds or Indemnitors' assets to the detriment of Contract obligations; (g) Indemnitors become the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, creditor assignment or actually becomes insolvent;
> (h) Indemnitors die, become legally incompetent, are imprisoned, are convicted of a felony, or disappear and cannot be located; (i) any representation furnished to the Company by or on behalf of any of the Indemnitors proves to have been materially false or misleading when made.

27.     Such General Agreement of Indemnity states in part:

> 4.     Indemnification and Hold Harmless:  The Indemnitors shall exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds.  Expense includes but is not limited to:  the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors.  Amounts due Company shall be payable upon demand.

5.     Claim Settlement:  The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors.  An itemized, sworn, statement by an employee of the Company or a copy of the voucher of payment shall be prima fade evidence of the propriety and existence of Indemnitors' liability.  The Company shall be entitled to immediate reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

<u>Travelers' Losses On Non-Inner Harbor Bonds</u>

28.     Travelers has incurred losses, damage, liability, costs, charges, attorney fees, and expenses under such non-Inner Harbor Bonds, and has received claims and demands, in consequence of having obligations in connection with such non-Inner Harbor Bonds.

29.     Travelers has made demand upon the defendants and each of them, as indemnitors under the General Agreement of Indemnity, requesting and requiring that they and each of them jointly and severally indemnify Travelers for the losses incurred and paid to date by Travelers under six of the aforesaid Bonds, as follows:

(i)     demand for the sum of $810,908.82 on account of losses paid by Travelers under Bond No. 105594546 (related to the Erie & Niagara D262047 Project);

(ii)    demand for the sum of $699,893.99 on account of loss paid by Travelers under Bond No. 105809269 (related to the Erie County 2013 Capital Overlay Project); and

(iii)   demand for the sum of $102,426.26 on account of loss paid by Travelers under Bond No. 105135961 (related to the Niagara County D261076 Project).

(iv)    demand for the sum of $190,932.37 on account of loss paid by Travelers under

6

Bond No. 105809189 (related to the 2013 Road Reconstruction Project).

30.     None of the defendants has paid Travelers such amounts demanded by it.

31.     To date, Travelers has sustained payment bond losses on projects other than the Inner Harbor Project that total $1,804,161.44 as set forth on the Schedule annexed hereto as "Exhibit 3."

32.     In addition, there are pending payment bond claims that total in excess of $400,000 as set forth on the Schedule annexed hereto as "Exhibit 3." These pending claims include claims on two other projects: (i) Bond No. 105809279 (related to the Meadow Drive Extension Project); and (ii) Bond No. 105809035 (related to the Seneca Creek Project).

33.     Any conditions precedent to Travelers' right to pursue its claims asserted in this action have occurred or been performed.

34.     By reason of the foregoing, Travelers is entitled to enforce all terms and provisions of the General Agreement of Indemnity, and to obtain all remedies thereunder.

35.     Travelers is entitled, and has reserved its right, to make further demand upon the defendants and each of them, as indemnitors under the General Agreement of Indemnity, requesting and requiring that they and each of them jointly and severally indemnify Travelers for, and exonerate and/or hold it harmless from and against, any and all other and/or further claims, loss, damage, demands, liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds, over and above and other than and apart from the aforesaid sums totaling $1,804,161.44 listed above, whether heretofore or hereafter incurred, received, paid, or demanded.

Travelers Losses On Inner Harbor Bonds

36.     With respect to the Inner Harbor Project, on or about July 22, 2013, ECHDC issued and communicated to DiPizio a Notice of Termination relating to the Inner Harbor Contract, stating in part, "by this letter and pursuant to Section 14.3 of the Contract, ECHDC hereby terminates the Contract effective this date."

37.     Also on or about July 22, 2013, ECHDC issued and communicated to Travelers a notice of a claim under the aforesaid Performance Bond relating to the Inner Harbor Contract, entitled "NOTICE OF CLAIM UNDER PERFORMANCE BOND NO. 10559445".

38.     In response to the ECHDC Performance Bond claim, Travelers and the ECHDC entered into a "Takeover Agreement" effective September 23, 2013, whereby Travelers agreed to complete the Inner Harbor Contract, subject to a full reservation of rights.

39.     Recitals C and E to the Takeover Agreement, respectively, provide as follows:

C.     On or about July 22, 2013, Owner terminated Principal's right to complete the General Contract, which termination is contested by the Principal and the Surety. The Principal, Owner and the Surety reserve all their rights and defenses regarding the legitimacy of the termination and any damages they have or will incur which result therefrom.

E.     Without waiving any rights or defenses of the Principal, Owner or the Surety all of which are expressly reserved, the Surety has agreed to complete the Remaining Work, subject to the terms and conditions of this Agreement.

40.     Pursuant to the Takeover Agreement, Travelers retained The Pike Company ("Pike") as its completion contractor.

41.     In August 2013, Travelers has recently intervened as a plaintiff in two actions

8

commenced by DiPizio against the ECHDC that are pending in the Supreme Court of the State of New York, County of Erie, Index. Nos. 602666/2013 and 803777/2013.

42.     In brief, Travelers has alleged that the ECHDC's July 2013 termination for default of DiPizio and performance bond demand were improper because Travelers' scheduling consultant had advised that there were excusable delays which entitled DiPizio to a significant time extension.

43.     Travelers is seeking to recover its excess costs of completion from the ECHDC.

44.     The ECHDC has denied that such termination of DiPizio and demand upon Travelers were improper, and has asserted four counterclaims for damages, including liquidated damages based upon DiPizio's failure to obtain substantial completion by June 6, 2013.

45.     Travelers' net losses as a result of issuing surety bonds with respect to the Inner Harbor Project are in excess of $20 million, and additional losses are anticipated.

FIRST CLAIM
(Against DiPizio as Bond Principal for Reimbursement of Losses on Bond No. 105594546)

46.     Travelers, as surety for DiPizio, has incurred losses and made loss payments in the total amount of $810,908.82 under such Bonds bearing Bond No. 105594546 (related to the Erie & Niagara D262047 Project), for which DiPizio as bond principal and primary obligor is liable by operation of law to reimburse Travelers as DiPizio's surety.

SECOND CLAIM
(Against DiPizio as Bond Principal for Reimbursement of Losses on Bond No. 105809269)

47.     Travelers, as surety for DiPizio, has incurred losses and made loss payments in

9

the total amount of $699,893.99 under such Bonds bearing Bond No. 105809269 (related to the Erie County 2013 Capital Overlay Project), for which DiPizio as bond principal and primary obligor is liable by operation of law to reimburse Travelers as DiPizio's surety.

THIRD CLAIM
(Against DiPizio as Bond Principal for Reimbursement of Losses on Bond No. 105135961)

48.     Travelers, as surety for DiPizio, has incurred losses and made loss payments in the total amount of $102,426.26 under such Bonds bearing Bond No. 105135961 (related to the Niagara County D261076 Project), for which DiPizio as bond principal and primary obligor is liable by operation of law to reimburse Travelers as DiPizio's surety.

FOURTH CLAIM
(Against DiPizio as Bond Principal for Reimbursement of Losses on Bond No. 105809189)

49.     Travelers, as surety for DiPizio, has incurred losses and made loss payments in the total amount of $190,932.37 under such Bonds bearing Bond No. 105809189 (related to the 2013 Road Reconstruction Project), for which DiPizio as bond principal and primary obligor is liable by operation of law to reimburse Travelers as DiPizio's surety.

FIFTH CLAIM
(Against All Defendants under Agreement of Indemnity for Reimbursement of Non-Inner Losses)

50.     Under the aforesaid General Agreement of Indemnity, each defendant is jointly and severally liable to indemnify and reimburse Travelers for such losses totaling $1,804,161.44 under such Bonds set forth in the First through Fourth Claims, and for any additional losses that Travelers may incur as a result of issuing such bonds pursuant to the General Agreement of Indemnity (without prejudice to Travelers' rights against defendants relating to the Inner Harbor Project).

10

## SIXTH CLAIM
### (Against DiPizio as Bond Principal for Reimbursement of Losses on Bond No. 10559445)

51.     Travelers, as surety for DiPizio, has incurred losses and made loss payments in

the excess of $20 million under such Bonds bearing Bond No. 10559445 (related to the Inner

Harbor Project), for which DiPizio as bond principal and primary obligor is liable by

operation of law to reimburse Travelers as DiPizio's surety.

## SEVENTH CLAIM
### (Against All Defendants under Agreement of Indemnity for Reimbursement of Inner Harbor Losses)

52.     Under the aforesaid General Agreement of Indemnity, each defendant is

jointly and severally liable to indemnify and reimburse Travelers for such losses totaling in

excess of $20 million on the Inner Harbor Project, and for any additional losses that

Travelers may incur as a result of issuing such Inner Harbor bonds pursuant to the General

Agreement of Indemnity.

## EIGHTH CLAIM
### (Against All Defendants under Agreement of Indemnity for Reimbursement of Expenses)

55.     Under the aforesaid General Agreement of Indemnity, each defendant is

jointly and severally liable to indemnify and reimburse Travelers for its expenses (including

attorney's fees), heretofore and hereafter incurred as a consequence of having obligations in

connection with any and all Bonds described in the General Agreement of Indemnity, claims

for which if formally and specifically asserted in writing in this action shall be included in

and incorporated by this reference into the demand for relief in this complaint in this action,

and otherwise shall be and are hereby reserved and preserved for assertion at a later.

11

WHEREFORE, plaintiff demands judgment against defendants, and each of them, jointly and severally, as follows:

(i)     on its First Claim, against defendant DiPizio in the amount of $810,908.82;

(ii)    on its Second Claim, against defendant DiPizio in the amount of $699,893.99;

(iii)   on its Third Claim, against defendant DiPizio in the amount of $102,426.26;

(iv)    on its Fourth Claim, against defendant DiPizio in the amount of $190,932.37;

(v)     on its Fifth Claim, against each defendant jointly and severally in the amount of $1,804,161.44;

(vi)    on its Sixth Claim, against DiPizio for its losses in excess of $20 million;

(vii)   on its Seventh Claim, against each defendant jointly and severally for its losses in excess of $20 million;

(viii)  on its Eighth Claim, against each defendant jointly and severally in an amount to be fixed, representing all of Travelers' expenses (including attorney's fees) incurred as a consequence of having obligations in connection with any and all Bonds described in the General Agreement of Indemnity;

(ix)    together with appropriate interest on the aforesaid amounts (at the rate of 9% per annum from the date of the aforesaid payments except as otherwise provided by applicable law); and

(x)     the costs and disbursements incurred in this action; and

(xi)    such other and further relief as to the Court may seem just and proper.

12

Dated:   Jericho, New York
         November 21, 2014

                                       TORRE, LENTZ, GAMELL, GARY
                                           & RITTMASTER, LLP
                                       *Attorneys for Plaintiff*
                                       *Travelers Casualty and Surety Company of*
                                       *America*

By:_____
                                 Benjamin D. Lentz, Esq.
                           100 Jericho Quadrangle, Suite 309
                           Jericho, New York 11753-2702
                           Tel.:  (516) 240-8900


To:     HoganWillig
           Robert W. Michalak, Esq.
           Attorneys for Defendants
           DIPIZIO CONSTRUCTION COMPANY, INC.,
           BOEHMER TRANSPORTATION CORP.,
           GREAT LAKES CONCRETE PRODUCTS, LLC,
           BERNARD DIPIZIO and LAURICE BOEHMER
           2410 North Forest, Suite 301
           Amherst, New York 14068
           (716) 636-7600
           rmichalak@hoganwillig.com

1699077_5

# EXHIBIT 1

## General Agreement
## Of Indemnity

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
**Hartford, Connecticut  06183**

We the undersigned, individually or jointly with others, or on behalf of any of our successors, assigns, heirs, executors, administrators, subsidiaries, parents, affiliates, partnerships, joint ventures, co-ventures and limited liability companies, whether in existence now or formed hereafter, individually and collectively referred to as "Indemnitors" enter into this General Agreement of Indemnity "Agreement" with  Travelers Casualty and Surety Company of America, its affiliated companies, successors, assigns, partners and subsidiaries whether in existence now or formed hereafter, individually and collectively referred to as "Company", witnesseth:

**WHEREAS, in** the transaction of business, certain bonds, guarantees, undertakings and/or contractual obligations, including renewals, extensions thereof hereinafter referred to as "Bonds" including bonds and undertakings for which the Company has obligations as a result of an asset purchase, acquisition or like transaction have heretofore been and may hereafter be required by, for, or on behalf of any one or more of the Indemnitors. Application has been made and will hereafter be made to execute such Bonds.  In connection with the execution, delivery and/or assumption of obligations of such Bonds, the Company requires complete indemnification.

**NOW, THEREFORE,** as an inducement to the Company and in consideration of the Company's execution of one or more Bonds, delivery of one or more Bonds, refraining from canceling one or more Bonds, and/or assumption of obligations by the Company of one or more Bonds, and for other good and valuable consideration, the Indemnitors, jointly and severally agree with the Company as follows:

1.      **Contract:**  For purposes of this Agreement, "Contract" shall mean an agreement of the Indemnitors for which the Company executes a Bond, procures a Bond, assumed the obligations of a Bond, or has guaranteed performance.

2.      **Default:**  Any of the following shall constitute a Default:  (a) a declaration of Contract default by the obligee or entity for whom a Contract is performed;  (b) actual breach or abandonment of any Contract;  (c) a breach of any provision of this Agreement;  (d) failure to make payment of a properly due and owing bill in connection with any Contract;  (e) the Company's good faith establishment of a reserve;  (f) improper diversion of Contract funds or Indemnitors' assets to the detriment of Contract obligations;  (g) Indemnitors become the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, creditor assignment or actually becomes insolvent;  (h) Indemnitors die, become legally incompetent, are imprisoned, are convicted of a felony, or disappear and cannot be located;  (i) any representation furnished to the Company by or on behalf of any of the Indemnitors proves to have been materially false or misleading when made.

3.      **Payment of Premium:**  The Indemnitors shall pay to the Company all premiums for every Bond executed and all renewals and extensions thereof, until the Company is discharged and fully released in writing from each such Bond.

4.      **Indemnification and Hold Harmless:**  The Indemnitors shall exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds.  Expense includes but is not limited to: the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Amounts due Company shall be payable upon demand.

5.      **Claim Settlement:**  The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors.  An itemized, sworn, statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitors' liability.  The Company shall be entitled to immediate reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

6.      **Collateral Security:**  Indemnitors agree to pay the Company, upon demand, an amount sufficient to discharge any claim or demand made against the Company on any Bond.  Indemnitors further agree to pay the Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by Indemnitors. These sums may be used by the Company to pay such claim or be held by the Company as collateral security against any loss, claim, liability or unpaid premium on any Bond.  The Company shall have no duty to invest, or provide interest on the deposit.

7.      **Remedies:**  In the event of a Default, Indemnitors assign, convey, and transfer to the Company all of their rights and interest growing in any manner out of the Contracts and assign all rights, title, and interest of all of Indemnitors' plants, tools, vehicles, machinery, hardware, software, equipment and materials, to be effective as of the date of such Contracts.  In addition, in the event of a Default, the Company shall have a right in sole discretion to:

   Take possession of the work under any Contract and to complete said Contract, or cause, or consent, to the completion thereof;
   (b)  Take possession of the Indemnitors' equipment, tools, machinery, vehicles, materials, office equipment, books, records, documents, software, electronically stored information and supplies at the site of the work or elsewhere and utilize them for the completion of the work under the Contracts without payment for such use;

(c) Assert or prosecute any right or claim in the name of the Indemnitors and to settle any such right or claim as the Company sees fit;

(d) Execute in the name of the Indemnitors, any instruments deemed necessary or desirable by the Company to: (a) provide the Company with title to assets, (b) take immediate possession of Contract funds whether earned or unearned, (c) collect such sums as may be due Indemnitors and to endorse in the name of the Indemnitors, and (d) collect on any negotiable instruments;

(e) Take possession of the Indemnitors' rights, title and interest in and to all Contracts, subcontracts let and insurance policies in connection therewith;

(f) Be subrogated to all the rights, remedies, properties, funds, securities and receivables of the Indemnitors on all Contracts or any other contract of Indemnitors and have the right to offset losses on any Contract or Bond against proceeds, funds, or property due from another Contract, Bond or other contract.

**8.     Joint and Several Liability:** The obligations of the Indemnitors hereunder are joint and several. The Company is authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement shall not bar or prejudice actions against or affect the liability of the others.

**9.     Decline Execution:** The Company has the right to refuse to provide any Bond, including final Bonds where the Company provided a bid Bond, without incurring any liability whatsoever to Indemnitors.

**10.     Trust Fund:** All payments due, received for or on account of any Contract shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which the Company as beneficiary may be liable under any Bond issued by the Company.   Company may open a trust account or accounts with a bank for the deposit of the trust funds.   Upon demand, Indemnitors shall deposit therein all trust funds received.   Withdrawals from such trust accounts shall require the express consent of the Company.

**11.     Books, Records and Credit:** Indemnitors shall furnish, and the Company shall have the right to free access, at reasonable times, to the records of the Indemnitors including but not limited to books, papers, records, documents, accounts and electronically stored information for the purpose of examining and copying them.   Indemnitors expressly authorize Company access to their credit records including but not limited to access to account numbers and/or account balances from financial institutions.

**12.     Attorney in Fact:** Indemnitors constitute, appoint and designate the Company as their attorney in fact with the right, but not the obligation, to exercise all rights of the Indemnitors assigned or granted to the Company and to execute and deliver any other assignments or documents deemed necessary by the Company to exercise its rights under this Agreement in the name of the Indemnitors.

**13.     Security Interest:** As security, the Indemnitors hereby grant to Company a security interest in all of their equipment, machinery, vehicles, tools, and material, as well as sums due or to become due in connection with any Contract or other contract. This Agreement or a carbon, photographic, xerographic, facsimile, copy, or other reproduction of this Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company in accordance with the Uniform Commercial Code and all similar statutes.   This Agreement a carbon, photographic, xerographic, facsimile, copy, or other reproduction may be filed by the Company without notice to perfect the security interest granted herein.   The Company may add schedules or other documents to this Agreement as necessary to perfect its rights.   The security interests are effective as of the date of each Contract for that Contract and for each contract for that contract.

**14.     Termination:** This is a continuing Agreement, which remains in full force and effect until terminated.   The sole method available to  Indemnitors to terminate their participation in this Agreement is by giving written notice sent by certified or registered mail, to the Company of the Indemnitors' intent to terminate.   The termination shall take effect no earlier than 30 days after the Company receives such notice ("Termination Date").   The obligation and liability of the Indemnitors giving such notice shall be limited to Bonds furnished before the Termination Date and to any maintenance or guarantee Bonds furnished after the Termination Date but incidental to any Bond furnished before the Termination Date.

**15.     Other Sureties:** If the Company procures the execution of Bonds by other sureties, executes Bonds with cosureties or obtains reinsurance, the provisions of this Agreement inure to the benefit of such other surety, cosurety or reinsurer.

**16.     Competence of Indemnitors:** The Indemnitors acknowledge that the execution of this Agreement and the undertaking of Indemnity was not made in reliance upon any representation concerning the financial condition, viability or responsibility, of any of the Indemnitors or the competence of Indemnitors to perform.

**17.     Nature of Rights:** If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.   Assent or refusal to assent to changes in any Contract or Bond by the Company shall not affect the obligations of the Indemnitors to the Company.   The Company's rights under this Agreement are in addition to all other rights of the Company however derived.   The rights and remedies afforded to the Company by the terms of this Agreement can only be modified by a rider in writing to this Agreement signed by an authorized representative of the Company.   If any of the Indemnitors fail to execute or improperly execute this Agreement; such failure shall not affect the obligations of Indemnitors.   The failure to sign or the improper execution of a Bond shall not affect the Company's rights under this Agreement. Termination and/or limitation of any Indemnitors' obligations under this Agreement shall in no way affect the obligations of any of the other Indemnitors whose obligations have not been terminated and/or limited. Indemnitors acknowledge this Agreement can be amended via rider to add another person, entity or entities as Indemnitor(s) to this Agreement

and Indemnitors waive any and all notice in connection with the addition of additional Indemnitors and further acknowledge the rights and obligations provided herein shall apply to all Indemnitors whenever made a party to the Agreement.

18.    **Corporate Resolution:** The Indemnitors have a substantial, material and beneficial interest (a) in the obtaining of Bonds by any of the Indemnitors; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bonds pursuant to this Agreement. The Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. The Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a Default hereunder.

Indemnitors shall include, but may not be limited to, the following entities and or individuals.

DiPizio Construction Co., Inc.
Boehmer Transporation Corp.
Bernard DiPizio
Laurice Boehmer

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY.   THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS, WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.**
IN TESTIMONY HEREOF, the Indemnitors have hereunto set their hands and fixed their seals this ___17th___ day of __October__, __2003__.

IMPORTANT:    1.    PRINT OR TYPE NAMES UNDER EACH SIGNATURE.
2.    ALL PERSONAL INDEMNITORS MUST PROVIDE A RESIDENTIAL ADDRESS AND SOCIAL SECURITY NUMBER AND EACH SIGNATURE MUST BE  NOTARIZED.
3.    ALL CORPORATE INDEMNITORS MUST PROVIDE AN ADDRESS AND FEDERAL TAX IDENTIFICATION NUMBER. TWO SIGNATURES ARE REQUIRED; THAT OF A SECRETARY AND AN AUTHORIZED OFFICER. EACH SIGNATURE MUST BE NOTARIZED.

If Indemnitor an Individual, sign below

_____          ▇▇▇▇▇▇      [REDACTED SS #]
Individual        Bernard DiPizio                                SS#

ACKNOWLEDGEMENT
STATE OF _____ New York County of __Erie_____

On this __17th__ day of __October__, __2003__, before me personally appeared _____Bernard DiPizio_____ of

__999 Borden Rd., Depew, NY 14043_____ known or proven to me to be the person described in
(Address)
and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same.

_____                 **ROSANNE LETTIERI**
Notary Public                               NOTARY PUBLIC, STATE OF NEW YORK
                                            QUALIFIED IN ERIE COUNTY
                                            MY COMMISSION EXPIRES JAN. 27, 20_06_

_____          ▇▇▇▇▇▇      [REDACTED SS #]
Individual        Laurice Boehmer                               SS#

ACKNOWLEDGEMENT
STATE OF _____ New York County of __Erie_____

On this _17th_ day of __October__, __2003__, before me personally appeared ____Laurice Boehmer_____ of

_Maple & Union Streets, Machias, NY 14101_____ known or proven to me to be the person described in
(Address)
and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same.

_____                 **ROSANNE LETTIERI**
Notary Public                               NOTARY PUBLIC, STATE OF NEW YORK
                                            QUALIFIED IN ERIE COUNTY
                                            MY COMMISSION EXPIRES JAN. 27, 20_06_

**If Indemnitor a Corporation, Limited Liability Company or Partnership, sign below:**

Instructions: All signatures must be notarized. If the company is: 1) a **Corporation**, the Secretary and an Authorized Officer should sign on behalf of the Corporation, 2) a **Limited Liability Corporation**, the Manager or Member(s) should sign on behalf of the LLC, or 3) a **Partnership**, the Partner(s) should sign on behalf of the partnership. Two signatures are required for all companies except where otherwise instructed by Travelers.

Each of the undersigned hereby affirms to the Company that he or she is a secretary or a duly authorized officer, manager or official of each of the business entities which enters into the foregoing Agreement as an indemnitor. In such capacity the undersigned is familiar with all of the documents set forth and establishes the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions, partnership, and operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned hereby affirms that such entity has the power and authority to enter into such Agreement and that the individual executing such Agreement on behalf of such entity is duly authorized to do so.

DiPizio Construction Co., Inc.
100 Stradtman Street
Cheektowaga, NY 14206
(Company)

By _Bernard DiPizio_ (Seal)
(Signature of Authorized Officer)

Bernard DiPizio, President
(Print or Type Name and Title)

16-1090139
(Federal Tax ID)

By _Laurice Boehmer_ (Seal)
(Signature of Authorized Officer)

Laurice Boehmer, Secretary
(Print or Type Name and Title)

ACKNOWLEDGEMENT
STATE OF ___New York___ County of ___Erie___

On this __17th__ day of __October__, __2003__, before me personally appeared ___Bernard DiPizio___ known or proven to me to be the ___President___, of the corporation and ___Laurice Boehmer___ known or proven to me to be the ___Secretary___, of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that they executed said instrument by authority of the Board of Directors of said corporation. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

ROSANNE LETTIERI
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES JAN. 27, 20_06_

Notary Public residing at _24 Kennedy Rd, Cheek. NY_
(Commission expires _1-27-06_) 14227

Boehmer Transportation Corp.
Maple & Union Streets
Machias, NY 14101
(Company)

By _Laurice Boehmer_ (Seal)
(Signature of Authorized Officer)

Laurice Boehmer, President
(Print or Type Name and Title)

16-0952042
(Federal Tax ID)

By _Richard P. Boehmer_ (Seal)
(Signature of Authorized Officer)

Richard P. Boehmer, Secretary
(Print or Type Name and Title)

ACKNOWLEDGEMENT
STATE OF ___New York___ County of ___Erie___

On this __17th__ day of __October__, __2003__, before me personally appeared ___Laurice Boehmer___ known or proven to me to be the ___President___, of the corporation and ___Richard P. Boehmer___ known or proven to me to be the ___Secretary___, of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that they executed said instrument by authority of the Board of Directors of said corporation. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

ROSANNE LETTIERI
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES JAN. 27, 20_06_

Notary Public residing at _24 Kennedy, Cheek, NY_
(Commission expires _1-27-06_) 14227

# EXHIBIT 2

### Travelers Casualty and Surety Company of America
### General Agreement of Indemnity
### Additional Indemnitor Rider

This Rider is hereby incorporated into, and forms a part of, the General Agreement of Indemnity executed by <u>DiPizio Construciton Co., Inc. and Boehmer Transportation Corp., Bernard DiPizio and Laurice Boehmer</u> ("Indemnitors") in favor of Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns ("Company"), and dated <u>October 17, 2003</u> ("Agreement").

<u>Great Lakes Concrete Products, LLC 5690 Camp Road, Hamburg, New York 14075</u> ("Undersigned") shall become an additional Indemnitor to the Agreement bound by all of the terms and conditions of the Agreement. The Undersigned agrees that all capitalized terms used in this Rider but not defined herein are used with the meanings given them in the Agreement.

The Undersigned acknowledges he/she has read the Agreement carefully. There are no separate agreements or understandings which in any way lessen the obligations as set forth in the Agreement. The Undersigned has a substantial, material and beneficial interest: (a) in the obtaining of Bonds by any of the Indemnitors; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bonds pursuant to the Agreement. The Undersigned has the full power and authority to execute, deliver and perform the Agreement and to carry out the obligations stated therein. The Undersigned further acknowledges and agrees that: (x) the execution, delivery and performance of the Agreement; (y) the compliance with the terms and provisions thereof; and (z) the carrying out of the obligations contemplated therein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of Undersigned, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Undersigned, or any other agreement binding upon Undersigned, or constitute a default thereunder.

This Rider shall: (1) not relieve, reduce, diminish or lessen the obligations of any other Indemnitor from any obligations set forth in the Agreement; and (2) not limit Company's rights and/or remedies under the Agreement.

| If Indemnitor an individual, sign below: |
| --- |

Indemnitor -- Individual          (signature)                          Month/Day/Year    Address

Indemnitor -- Individual          (print or type)                                        SS#

**ACKNOWLEDGEMENT**
STATE OF ▓▓▓▓▓▓▓▓          County of ▓▓▓▓▓▓▓▓▓

On this ____ day of _____, _____, before me personally appeared _____ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public                          (signature)

Notary Public                          (print or type)

Notary Public residing at:

Commission expires:

| If Indemnitor a Corporation, Limited Liability Company, Partnership, or Trust, sign below: |
| --- |

**Instructions:** All signatures must be notarized. If the entity is: 1) a corporation, the secretary and an authorized officer should sign on behalf of the corporation; 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC; 3) a partnership, the partner(s) should sign on behalf of the partnership; or 4) a trust, all trustees should sign. Two signatures are required for all entities except where otherwise instructed by Company.

**Each of the undersigned hereby affirms to Company as follows:** I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Rider. In such capacity I am familiar with all of the documents which set forth and establish the rights which

Additional Indemnitor Rider 8-2004                                                          Page 1 of 2

govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions, and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Rider and that the individuals executing this Rider on behalf of such entity are duly authorized to do so.

Great Lakes Concrete Products, LLC
5690 Camp Road
Hamburg, New York 14075

45-154201

Indemnitor – Corporation, Limited Liability Company, Partnership, or Trust (circle one)

(Federal Tax ID)                                    Month/Day/Year

By _____ (Seal)
(Signature of Authorized Official)

By _____ (Seal)
(Signature of Authorized Official)

Bernard DiPizio, Member
(Print or Type Name and Title)

Laurice Boehmer, Member
(Print or Type Name and Title)

5690 Camp Road, Hamburg, New York 14075
(Address)

New York
(State of Incorporation / Formation)

ACKNOWLEDGEMENT
STATE OF New York          County of Albany

On this 13th day of September, 2007, before me personally appeared Bernard DiPizio, known or proven to me to be the Member of the entity executing the foregoing instrument ("Entity"), and Laurice Boehmer, known or proven to me to be the Meber of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of Entity for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of Entity and that it was affixed and that they executed said instrument by authority of Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public                    (signature)

_____
Notary Public                    (print or type)

Notary Public residing at:

Commission expires:    ROSANNE LETTIERI
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES JAN. 27, 20__

Travelers Casualty and Surety Company of America hereby acknowledges receipt of this Rider and consents to its execution.

Travelers Casualty and Surety Company of America

By _____ (Seal)
(Signature of Authorized Employee)

_____
(Print or Type Name and Title)

_____
(Address)

# EXHIBIT 3

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Claim Num | Claimant | Project | Bond # | Status | Notice Rcvd | Lawsuit | Amt Claimed | Amt Paid By Travelers | Amt Confirmed by DiPizio |
| 2 | 092-SC-T1306143-RG | Paul J. Gallo Contracting, Inc | NIAGARA CO. - D261076 | 092-SB-105135961 | Closed | 2013/04/08 | N | $118,344.14 | $102,426.26 | Undisputed amt |
| 3 | | | | | | | | | | |
| 4 | 092-SC-T1311995-RG | Buffalo Crushed Stone | ERIE & NIAGARA CO'S. - D262047 | 092-SB-105594546 | Closed | 2013/08/07 | N | $317,110.83 | $317,110.83 | YES |
| 5 | 092-SC-T1311995-RG | County Line Stone Co., Inc | ERIE & NIAGARA CO'S. - D262047 | | Closed | 2013/07/30 | N | $565,239.12 | $493,797.99 | YES |
| 6 | 092-SC-T1311995-RG | Gernatt Asphalt Products, Inc. | ERIE & NIAGARA CO'S. - D262047 | | Open | 2013/09/26 | N | $23,602.43 | | DISPUTED |
| 7 | | | | | | | | | | |
| 8 | 092-SC-T1406060-RG | Buffalo Crushed Stone | 2013 CAPITAL OVERLAY PROGRAM | 092-SB-105809269 | Closed | 2014/04/22 | N | $453,756.69 | $453,391.54 | YES |
| 9 | 092-SC-T1406060-RG | Accent Stripe, Inc. | 2013 CAPITAL OVERLAY PROGRAM | | Open | 2014/11/11 | N | $35,373.70 | $0.00 | YES |
| 10 | 092-SC-T1406060-RG | K & S Contractors Supply, Inc. | 2013 CAPITAL OVERLAY PROGRAM | | Open | 2014/07/24 | N | $8,162.11 | $0.00 | YES |
| 11 | 092-SC-T1406060-RG | County Line Stone Co., Inc. | 2013 CAPITAL OVERLAY PROGRAM | | Closed | 2014/05/15 | N | $246,502.45 | $246,502.45 | YES |
| 12 | 092-SC-T1406060-RG | Dig It of New York, LLC | 2013 CAPITAL OVERLAY PROGRAM | | Open | 2014/07/29 | N | $31,212.28 | $0.00 | YES $31,174.78 |
| 13 | 092-SC-T1406060-RG | Masters Edge, Inc. | 2013 CAPITAL OVERLAY PROGRAM | | Open | 2014/09/15 | N | $8,800.00 | $0.00 | YES |
| 14 | 092-SC-T1406060-RG | Killian Construction | 2013 CAPITAL OVERLAY PROGRAM | | Open | 2014/10/28 | N | $37,636.50 | $0.00 | YES |
| 15 | | | | | | | | | | |
| 16 | 092-SC-T1406203-NR | Masters Edge, Inc. / Upstate New York Engineers Joint Welfare, Pension, And Training Funds | MEADOW DRIVE EXTENSION | | Open | 2014/07/22 | N | $30,534.24 | $0.00 | YES $3,608.88 |
| 17 | 092-SC-T1406203-NR | | MEADOW DRIVE EXTENSION | | Open | 2014/11/10 | N | $80,307.99 | $0.00 | |
| 18 | | | | | | | | | | |
| 19 | 092-SC-T1409435-RG | County Line Stone Co., Inc. | 2013 ROAD RECONSTRUCTION | 092-SB-105809189 | Closed | 2014/07/01 | N | $190,932.37 | $190,932.37 | YES |
| 20 | 092-SC-T1409435-RG | Dig It Of New York, LLC | 2013 ROAD RECONSTRUCTION | | Open | 2014/07/29 | N | $48,442.33 | $0.00 | YES |
| 21 | 092-SC-T1409435-RG | Masters Edge, Inc. | 2013 ROAD RECONSTRUCTION | | Open | 2014/09/02 | N | $9,073.41 | $0.00 | |
| 22 | | | | | | | | | | |

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 092-SC-T1409779-RG | Accent Stripe, Inc. | **SENECA BUFFALO CREEK CASINO OFF SITE UTILITIES** | 092-SB-105809035 | Open | 2014/11/11 | N | $7,245.99 | $0.00 | YES |
| 24 | 092-SC-T1409779-RG | K & S Contractors Supply, Inc. | SENECA BUFFALO CREEK CASINO OFF SITE UTILITIES | | Open | 2014/07/24 | N | $18,694.59 | $0.00 | YES |
| 25 | 092-SC-T1409779-RG | South Buffalo Electric Inc. | SENECA BUFFALO CREEK CASINO OFF SITE UTILITIES | | Open | 2014/07/08 | N | $55,891.59 | $0.00 | YES $48,064.72 |
| 26 | 092-SC-T1409779-RG | Upstate New York Engineers Funds | SENECA BUFFALO CREEK CASINO OFF SITE UTILITIES | | Open | 2014/09/08 | Y | $19,962.14 | $0.00 | YES $19,870.84 |
| 27 | Grand Totals | | | | | | | $2,306,824.90 | $1,804,161.44 | |
| 28 | | | | | | | | | | |

Civil Action No.: 1:14-CV-576A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

Plaintiff,

-against-

DIPIZIO CONSTRUCTION COMPANY, INC.,
BOEHMER TRANSPORTATION CORP.,
GREAT LAKES CONCRETE PRODUCTS, LLC,
BERNARD DIPIZIO and LAURICE BOEHMER,

Defendants

## AMENDED COMPLAINT

TORRE, LENTZ, GAMELL, GARY & RITTMASTER, LLP
Attorneys for Plaintiff
*TRAVELERS CASUALTY AND SURETY*
*COMPANY OF AMERICA*
100 Jericho Quadrangle, Suite 309
Jericho, NY 11753-2702
Tel.:  516-240-8900