**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA,**

                              **Plaintiff,**                   **14-CV-576A(Sr)**

**v.**

**DIPIZIO CONSTRUCTION**
**COMPANY, INC., et al.,**

                              **Defendants.**

_____

## <u>REPORT, RECOMMENDATION  AND ORDER</u>

This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report

upon dispositive motions.  Dkt. #20.


Currently before the Court is Travelers Casualty and Surety Company of

America's ("Travelers'") motion for summary judgment seeking $1,993,033.32 paid

pursuant to five performance bonds and a determination of liability, with the amount

subsequently determined by inquest, on another performance bond, against signatories

to a General Agreement of Indemnity in favor of Travelers.  Dkt. #32.  For the following

reasons, it is recommended that plaintiff's motion be granted.

## BACKGROUND

On October 17, 2003, DiPizio Construction Company ("DiPizio"), Boehmer Transportation Corp., Bernard DiPizio and Laurice Boehmer executed a General Agreement of Indemnity in favor of Travelers.  Dkt. #34, ¶ 1 & Dkt. #34-1, pp.21-22, ¶¶ 11-14.  On September 13, 2007, Great Lakes Concrete Products executed a General Agreement of Indemnity Additional Indemnitor Rider in favor of Travelers.  Dkt. #34, ¶ 2 & Dkt. #34-1, p.22, ¶ 15.

As relevant to the instant action, the General Agreement of Indemnity provides that in consideration for Travelers issuing bonds on behalf of the Indemnitors, the Indemnitors jointly and severally agree to the following terms:

> 2.  Default: Any of the following shall constitute a Default: (a) a declaration of Contract default by the obligee or entity for whom a Contract is performed; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) the Company's good faith establishment of a reserve; (f) improper diversion of Contract funds or Indemnitors' assets to the detriment of Contract obligations; (g) Indemnitors become the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, creditor assignment or actually becomes insolvent; (h) Indemnitors die, become legally incompetent, are imprisoned, are convicted of a felony, or disappear and cannot be located; (I) any representation furnished to the Company by or on behalf of any of the Indemnitors proves to have been materially false or misleading when made.

> * * *

> 4.  Indemnification and Hold Harmless: The Indemnitors shall exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand,

liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds.  Expense includes but is not limited to: the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors.  Amounts due Company shall be payable upon demand.

5.   Claim settlement: The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors.  An itemized, sworn statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitors' liability.  The Company shall be entitled to immediate reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

Dkt. #34-1, p.15.


On April 25, 2012, DiPizio entered into a construction contract with the

Erie Canal Harbor Development Corporation ("ECHDC"), for the Erie Canal Inner

Harbor Project.  Dkt. #56, ¶ 3.  A performance bond and material payment bond (Bond

No. 105594405), was issued by Travelers, as surety, and DiPizio, as principal, to the

ECHDC as obligee.  Dkt. #32-1, ¶ 4.  The performance bond provides, in relevant part,

that

Whenever [DiPizio] shall be, and declared by [ECHDC], to be in default under the Contract, [ECHDC], having performed [its] obligations thereunder, the Surety may

> promptly remedy the default, or shall promptly:
> (1) Complete the Contract in accordance with its terms and conditions; or
> (2) Obtain a bid or bids for submission to [ECHDC] for completing the Contract in accordance with its terms and conditions . . . .

Dkt. #34-2, p.95.


A Project Performance Report dated January 24, 2013 was prepared by LiRo Group on behalf of ECHDC outlining concerns as to DiPizio's performance as general contractor.  Dkt. #34-2, p.7.  DiPizio responded with a Recovery Schedule on February 22, 2013; LiRo subsequently noted "many serious deficiencies in that Recovery Schedule."  Dkt. #34-2, p.7.


In March of 2013, ECHDC requested that DiPizio's surety company become involved in the project, prompting representatives of Travelers to attend subcontractor meetings. Dkt. #34-2, pp. 3, 5 & 7; Dkt. #56-6, ¶ 3.  Eric Kopacz, Project Manager for Industrial Power and Lighting, a subcontractor of DiPizio, affirms that during several of these meetings, representatives of Travelers stated "that DiPizio would be terminated from the job and Travelers would take over the project."  Dkt. #56-6, ¶ 4.


By e-mail dated May 3, 2013, in response to an inquiry as to the action plan for ECHDC to exercise its right of termination, the ECHDC President, Thomas Dee, advised that once the notice of intent to terminate the contract was sent, DiPizio

-4-

would have five days to respond, at which point

> Travelers (bond company) would take over the construction
> process.  They have been involved for the last several
> weeks.

Dkt. #56-2, p.2.


On May 6, 2013, LiRo Group prepared a performance update "based on 6 weeks of involvement from the [DiPizio's] new project management subconsultant . . . as well as the surety's subconsultant," noting limited progress on previously identified performance issues. Dkt. #34-2, pp.3-8.


By e-mail dated May 7, 2013, ECHDC Board Member Sam Hoyt advised Kenneth Adams, President of the New York State Department of Economic Development, of ECHDC's intent to serve notice of termination of the contract with DiPizio and advised that upon termination, Travelers "will be responsible for completing the project."  Dkt. #56-3, p.2.


On May 8, 2013, ECHDC issued a notice of intent to terminate the contract with DiPizio.  Dkt. #56, ¶ 4.


On May 13, 2013, DiPizio commenced a lawsuit against the ECHDC in New York State Supreme Court, Erie County (No. 602666/2013), seeking an injunction to stop ECHDC from terminating DiPizio's contract.  Dkt. #32-1, ¶ 31.  Following a hearing, the New York State Supreme Court denied the preliminary injunction on the

ground that DiPizio would not suffer irreparable harm inasmuch as it possessed an adequate remedy at law, *to wit*, monetary damages. Dkt. #32-1, ¶ 32.

As a result of the dispute between ECHDC and DiPizio, and the expected negative impact of such dispute on DiPizio's finances, Travelers determined that additional review would be required before new bonds would be issued to DiPizio.  Dkt. #56-5, p.2

On July 22, 2013, ECHDC terminated the contract with DiPizio and made a claim against Travelers on the performance bond.  Dkt. #32-1, ¶¶ 33-34.

On September 13, 2013, DiPizio commenced a defamation action (No. 801815/2013), against the New York State Urban Development Corporation d/b/a Empire State Development, the ECHDC, Sam Hoyt, Thomas Dee, and Mark Smith. Dkt. #30-1, ¶ 16.

Effective September 23, 2013, ECHDC and Travelers entered into a Takeover Agreement whereby Travelers agreed to complete the remaining work on the Erie Canal Inner Harbor Project contract.  Dkt. #32-1, ¶ 35 & 34-2, p.9.

In November of 2013, DiPizio commenced a declaratory judgment action (No. 803777/2013), seeking a declaration that the performance bond on the Erie Canal Inner Harbor Project has not been triggered and that ECHDC breached the contract. Dkt. #44-3, p.5.

On July 16, 2014, Travelers commenced this diversity action against DiPizio and other signatories to the General Agreement of Indemnity seeking payment on the following bonds: $720,908.82 on the Erie & Niagara D262047 Project (Bond No. 105594546); $699,893.99 on the Erie County 2013 Capital Overlay Project (Bond No. 105809269); and $102,426.26 on the Niagara County D261076 Project (Bond No. 105135961), and asserting a general claim for reimbursement of expenses on all bonds issued, including Bond No. 105594405 pertaining to the Erie Canal Inner Harbor Project. Dkt. #1.

On August 14, 2014, Travelers intervened as plaintiff in the state court contract and declaratory judgment actions relating to the Erie Canal Inner Harbor Project (No. 602666/2013 and No. 803777/2013), seeking payment of the excess costs of completion of the contract, estimated at more than $10,000,000.00, from ECHDC. DKt. #30-1, ¶ 17.  Travelers alleges that the termination of the contract by ECHDC was improper because DiPizio was entitled to a significant time extension for completion of the contract due to different site conditions below subgrade elevations and multiple design changes.  Dkt. #30-2, ¶ 12-14.  Travelers further alleges that DiPizio's delay in completing the remaining work under the Erie Canal Inner Harbor Project contract was attributable to spalling of a concrete slab and related repair necessitated by an ECHDC design error.  Dkt. #30-2, ¶¶ 15-18.  Travelers seeks recovery against ECHDC based upon its rights under the Indemnity Agreement as the assignee and real party in interest of DiPizio's claims against ECHDC and also based upon its own losses caused by ECHDC following Travelers' takeover of the Erie Canal Inner Harbor Project.  Dkt. #35, p.13.

In its answer, DiPizio asserted counterclaims for damages arising from Travelers takeover of the project and refusal to allow DiPizio to complete the contract, as well as from Travelers refusal to issue additional bonds to DiPizio, including tortious interference with DiPizio's contract with ECHDC; gross negligence; and negligence. Dkt. #19.

On November 21, 2014, Travelers amended its complaint in this action to supplement its losses on the bonds set forth in the original complaint and quantify its loss on the Erie Canal Inner Harbor Project as more than $20 million.  Dkt. #22.  The amended complaint also added claims, pursuant to the General Agreement of Indemnity, for payment of losses on Bond No. 105809035 pertaining to the Seneca Creek Casino Project; Bond No. 105809279 pertaining to the Meadow Drive Extension Project; and Bond No. 105809189 pertaining to a 2013 Road Reconstruction Project. Dkt. #22.

Defendants filed a motion to stay this action pending resolution of the state court actions.  Dkt. #22.

Travelers opposed the motion to stay and moved for summary judgement with respect to $1,993,033.32 in payments made pursuant to five bonds as well as a determination of liability with respect to the Erie Canal Inner Harbor Project bond, with damages to be determined upon inquest.  Dkt. #32.  In support of the motion for summary judgment, Patsy Crowder, Senior Claim Representative for Travelers, affirms

-8-

that Travelers has sustained net losses of $1,993,033.32 on five performance and payment bonds issued to DiPizio: (1) $812,241.08 pursuant to Bond No. 105809269 relating to the Erie County 2013 Capital Overlay Project (Dkt. #33-1, p.3); (2) $810,908.82 pursuant to Bond No. 105594546 relating to the Erie & Niagara D262047 Project (Dkt. #33-1, p.11); (3) $28,082.46 pursuant to Bond No. 105809035 relating to the Seneca Creek Casino Project (Dkt. #33-1, p.19); (4) $239,374.70 pursuant to Bond No. 105809189 relating to the 2013 Road Reconstruction Project (Dkt. #33-1, p.27); and (5) $102,426.26 pursuant to Bond No.105135961 relating to the Niagara County D261076 Project (Dkt. #33-1, p.32).  Dkt. #33, ¶ 2.

By Decision and Order entered April 24, 2015, the Hon. Timothy J. Walker, J.S.C., determined that DiPizio had defaulted on the General Agreement of Indemnity and that all remaining claims in the contract, defamation and declaratory judgment actions have been assigned to Travelers, who is the real party in interest for purposes of all claims in the state court actions.  Dkt. #44-3.

By Decision and Order entered May 7, 2015, this Court denied defendants' motion to stay this action pending resolution of the state court actions, stating:

> Resolution of the state court actions will determine whether DiPizio or ECHDC breached the contract on the Erie Canal Inner Harbor Project and the amount of damages due as a result of that breach, while the instant action will determine Travelers' rights under the General Agreement of Indemnity with respect to claims on multiple bonds.  Even if the state court actions determine that DiPizio did not default on the contract with ECHDC, such a finding would not affect

DiPizio's liability under an agreement to indemnify against
damages incurred by Travelers as surety to ECHDC.

Dkt. #42, p.7.


By Decision and Order entered June 1, 2015, Justice Walker consolidated

the state court actions and noted that "since the Court has now determined that

Travelers is the assignee and real party in interest of DiPizio's claims against [ECHDC],

DiPizio is no longer a plaintiff . . .  in these actions."  Dkt. #54-1, p.2.  As a result,

Justice Walker ordered the captions amended to name "Travelers Casualty and Surety

Company of America, asserting claims in its own right, and as the assignee and real

party in interest of the claims asserted by DiPizio Construction Company, Inc.," as

plaintiff.  Dkt. #54-1, p.2.


On June 9, 2015, the day before the deadline for responses to Travelers'

motion for summary judgment, defendants filed a motion to disqualify Travelers'

counsel and stay defendants' time to respond to the summary judgment motion.  Dkt.

#49.  The Court denied so much of the motion as sought to delay the summary

judgement motion and subsequently denied the motion to disqualify counsel.  Dkt. #51

& Dkt. #60.


By Decision and Order entered July 8, 2015, this Court granted Travelers'

motion to amend its complaint to update its losses on the bonds, add a claim to specific

performance of the Indemnitors' duties under the collateral security clause of the

General Agreement of Indemnity and to join Rosanne DiPizio, individually and as

Trustee of the Bernard DiPizio Family Trust; Daniel F. DiPizio, as Trustee of the DiPizio

Trust; Stradtman Park, LLC; Richard P. Boehmer, as Trustee of the L. Boehmer Family

Trust; and Castle & Mosey, L.P. a/k/a Castle Mosey, L.P. as defendants on claims

seeking to recover losses on the bonds, set aside and enjoin fraudulent conveyances,

enjoin the dissipation of equity in certain assets, recover diverted trust funds under

Article 3-A of New York's Lien Law and declare a mortgage interest invalid. Dkt. #61.


## DISCUSSION AND ANALYSIS

In opposition to the motion for summary judgment, the parties to the

General Agreement of Indemnity, *to wit*, DiPizio, Boehmer Transportation Corp.,

Bernard DiPizio, Laurice Boehmer and Great Lakes Concrete Products ("Indemnitors"),

request an opportunity to conduct discovery as to whether Travelers encouraged

ECHDC to terminate DiPizio by assuring ECHDC that it would complete the Inner

Harbor project in the event that ECHDC terminated DiPizio, thereby breaching its duty

of good faith and fair dealing. Dkt. #56-7.  More specifically, the Indemnitors argue that

> In executing the General Agreement of Indemnity, the
> Indemnitors had the reasonable expectation that any
> invocation of the GAI by Travelers would be based on a
> reasonable investigation of the underlying facts, not an
> assurance by Travelers to ECHDC that if ECHDC terminated
> [DiPizio], Travelers would step in to complete the project.

Dkt. #56-7, p.9.  The Indemnitors claim that

> Travelers went totally contrary to its obligations under the
> performance bond and gave assurances to ECHDC that if
> ECHDC terminated [DiPizio] that Travelers would complete

> the project.  There was no investigation.  There was no
> default.  There was no termination.  There was no reason for
> Travelers to make this assurance other than its intentional
> wrongdoing.

Dkt. #56-7, p.9.  The Indemnitors argue that Travelers' losses "were all caused by the

ripple effect of Travelers' improper intentional bad faith decision and representation to

ECHDC that if ECHDC terminated [DiPizio] that Travelers would step in and complete

the Inner Harbor Project, which assurance facilitated ECHDC's decision to terminate

[DiPizio]."  Dkt. #56-7, pp.11-12. The Indemnitors also argue that there is a question of

fact as to whether DiPizio was in default on the Erie Canal Inner Harbor Project, as

evidenced by Travelers defense in the state court actions asserting that ECHDC

wrongfully terminated DiPizio.  Dkt. #56-7, pp.10-11.


Travelers replies that defendants have failed to dispute their statement of

material facts and have failed to rebut Travelers' documentation as to the payments

made on the non-Inner Harbor projects.  Dkt. #59.


**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c).   A fact is "material" only if it has

some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute

regarding a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). The district court must view the evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in that party's favor. *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Discovery**

"The party opposing summary judgment is not automatically entitled to discovery. *Seneca Beverage Corp. v. Healthnow N.Y., Inc.*, 200 F.App'x 25, 27 (2d Cir. 2006), *citing Gualandi v. Adams*, 385 F.3d 236, 244-45 (2d Cir. 2004).  Rather, the nonmoving party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine

issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Id.*, citing *Gualandi*, 385 F.3d at 244; *See* Fed. R. Civ. P. 56(d) (When a party seeks additional discovery before resolution of a motion for summary judgment, the party must show, "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.").  The failure to file such an affidavit is fatal. *Haran v. Dow Jones & Co.*, 216F.3d 1072 (2d 2000), *citing Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999).  Even with such an affidavit, the court "may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered." *National Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos., Inc*., 265 F.3d 97, 117 (2d Cir. 2001).

            The Indemnitors have failed to file the affidavit required by Rule 56(d) of the Federal Rules of Civil Procedure specifying why they have been unable to obtain discovery from relevant individuals or how the discovery sought would support its opposition to this motion for summary judgment.  The Indemnitors proffer no motivation for Travelers to conspire with ECHDC to provoke a declaration of DiPizio's default and ECHDC's documented and ongoing concerns regarding  DiPizio's performance undermines DiPizio's speculation that assurances by Travelers were anything other than a recitation of Travelers obligation as surety on the performance bond.  As a result, the Court finds no basis to delay a determination of Travelers' motion for summary judgment.

**Indemnification Agreement**

Under well-settled New York case law, where a surety and its principal have executed an overarching indemnity agreement giving the surety complete discretion whether to settle or defend claims pursuant to underlying bonds, such a provision means that the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount, and this rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee. *Travelers Indem. Co. v. Harrison Constr. Grp. Corp.*, No. CV 06-4011, 2008 WL 4725970. at * 3 (E.D.N.Y. Oct. 22, 2008), *quoting Frontier Ins. Co. v. Renewal Arts Constr. Corp.*, 12 A.D.3d 891, 892 (3rd Dep't 2004). In the "surety-indemnification context, New York courts have equated 'bad faith' with 'fraud or collusion.'" *Id.* at *5, *quoting Peerless Ins. Co. v. Talia Constr. Co., Inc.*, 272 A.D.2d 919, 920 (4th Dep't 2000). Conversely, New York courts have declared that "[p]ayment is made in good faith if the surety pays the claims 'in the honest belief that it was liable for such claims.'" *Lee v. T.F. DeMilo Corp.*, 29 A.D.3d 867, 868 (2d Dep't 2006), *quoting Maryland Cas. Co. v. Grace,* 292 N.Y. 194, 200 (1944).

Pursuant to the General Agreement of Indemnity, the Indemnitors are required to indemnify Travelers for DiPizio's "failure to make payment of a properly due and owing bill in connection with any Contract." Dkt. #34-1, p.15. It is undisputed that Travelers has made payments totaling $1,993,033.32 to subcontractors of DiPizio pursuant to five performance and payment bonds issued to DiPizio on projects unrelated to the Erie Canal Inner Harbor Project. Dkt. #33, ¶ 2. DiPizio does not

dispute the propriety of these payments.  Accordingly, it is recommended that Travelers

be granted summary judgment on its claim for damages in the amount of

$1,993,033.32 on the bonds unrelated to the Erie Canal Inner Harbor Project.


The General Agreement of Indemnity also provides that the Indemnitors

are required to indemnify Travelers in the event of a declaration of default by the

obligee. Dkt. #34-1, p.15.  The propriety of ECHDC's declaration of default is irrelevant

to the Indemnitors obligations under the General Agreement of Indemnity. *See Federal*

*Ins. Co. v. McKane*, 312 Fed. App'x. 351 (2d Cir. 2008) (where General Agreement of

Indemnity included declaration of default as event triggering liability, questions as to

whether principal was actually in default were insufficient to preclude summary

judgment under General Agreement of Indemnity);  *Frontier*, 12 A.D.3d at 893 (rejecting

argument that question as to whether obligee defaulted under construction contract

precluded summary judgment on surety's claim against principal on a performance

bond).


This Court agrees with the determination in *Frontier* that the volunteer rule

was misapplied in *General Insurance Co. of America v. K. Capalino Construction Corp*.,

903 F. Supp. 623, 626 (S.D.N.Y. 1995), a case relied upon by the Indemnitors.  As

determined by the *Frontier* court, the volunteer rule "is pertinent only in the absence of

an indemnification agreement controlling the principal's obligation to the surety."  12

A.D.3d at 893; *accord Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs., Inc*., 172

Fed App'x 382, 384 (2d Cir. 2006).  Therefore, it is recommended that Travelers be

granted summary judgment holding the Indemnitors liable under the General

Agreement of Indemnity for any reasonable, good faith payments made on the Erie

Canal Inner Harbor Project as determined by inquest at a later date.


## CONCLUSION

For the foregoing reasons, it is recommended that Travelers' motion for

summary judgment (Dkt. #32), seeking $1,993,033.32 paid pursuant to five payment

bonds and a determination of liability on the Erie Canal Inner Harbor Project

performance bond, with the amount of damages determined by inquest, be granted

against the signatories to the General Agreement of Indemnity.


Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of the

Court.


ANY OBJECTIONS to this Report, Recommendation and Order must be

filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P.

72(b) and Local Rule 72(b).


The district judge will ordinarily refuse to consider *de novo* arguments, case

law and/or evidentiary material which could have been, but were not presented to the

magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
               **July 30, 2015**

                              _s/ H. Kenneth Schroeder, Jr._
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**