**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA,**

                              **Plaintiff,**                    **14-CV-576A(Sr)**

**v.**

**DIPIZIO CONSTRUCTION**
**COMPANY, INC., et al.,**

                              **Defendants.**

───────────────────────────────


                    <u>**REPORT, RECOMMENDATION  AND ORDER**</u>

         This case was referred to the undersigned by the Hon. Richard J. Arcara,
in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report
upon dispositive motions.  Dkt. #20.  It is currently assigned to the Hon. Frank P.
Geraci, Jr.


         Currently before the Court is Travelers Casualty and Surety Company of
America's ("Travelers'") motion for partial summary judgment seeking: (1)
$2,105,829.09, plus prejudgment interest at the rate of 9% per annum pursuant to state
law from the date of loss payments, against  DiPizio Construction Company ("DiPizio"),
Boehmer Transportation Corp., Great Lakes Concrete Products, LLC,  Bernard DiPizio
and Laurice Boehmer (collectively, the "Indemnitors"), jointly and severally, as
demanded in the first through seventh claims relating to the Non-Inner Harbor surety
bonds; (2) a determination of liability, with the amount subsequently determined by

inquest, with respect to the eighth and ninth claims relating to the Inner Harbor surety

bonds; (3) an award of $4.25 million as collateral security for Travelers' anticipated

losses under the Inner Harbor bonds as set forth in the eleventh claim; (4) severance of

the remaining claims and counterclaims; and (5) judgment pursuant to Fed. R. Civ. P.

54 and 58.  Dkt. #111. For the following reasons, it is recommended that plaintiff's

motion be granted.


**BACKGROUND**

On October 17, 2003, DiPizio, Boehmer Transportation Corp., Bernard

DiPizio and Laurice Boehmer executed a General Agreement of Indemnity ("GAI"), in

favor of Travelers.  Dkt. #119, ¶ 1.  On September 13, 2007, Great Lakes Concrete

Products, LLC executed an Additional Indemnitor Rider to the GAI in favor of Travelers.

Dkt. #119, ¶ 2.


As relevant to the instant action, the GAI provides that in consideration for

Travelers issuing bonds on behalf of the Indemnitors, the Indemnitors jointly and

severally agree to the following terms:

> 2.  **Default**: Any of the following shall constitute a Default:
> (a) a declaration of Contract default by the obligee or entity
> for whom a Contract is performed . . .
>
> * * *
>
> 4.  **Indemnification and Hold Harmless**: The Indemnitors
> shall exonerate, indemnify and save the Company harmless
> from and against every claim, loss, damage, demand,
> liability, cost, charge, Bond premium, suit, judgment,
> attorney's fee, and expense which the Company incurs in

consequence of having obligations in connection with such Bonds.  Expense includes but is not limited to: the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Amounts due Company shall be payable upon demand.

5.  **Claim settlement**: The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. An itemized, sworn statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitors' liability. The Company shall be entitled to immediate reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

6.  **Collateral Security**.  Indemnitors agree to pay the Company, upon demand, an amount sufficient to discharge any claim or demand made against the Company on any Bond. Indemnitors further agree to pay the Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by Indemnitors. These sums may be used by the Company to pay such claim or be held by the Company as collateral security against any loss, claim, liability or unpaid premium on any Bond. The Company shall have no duty to invest, or provide interest on the deposit.

7. **Remedies**.  In the event of a Default, Indemnitors assign, convey, and transfer to the Company all of their rights and interest growing in any manner out of the Contracts and assign all rights, title, and interest of all Indemnitors' plants, tools, vehicles, machinery, hardware, software, equipment and materials, to be effective as of the date of such Contracts.  In addition, in the event of a Default, the Company shall have the right in its sole discretion to:
[a] Take possession of the work under any Contract and

to complete said Contract, or cause, or consent, to
the completion thereof;

* * *

(c) Assert or prosecute any right or claim in the name of
the Indemnitors and to settle any such right or claim
as the Company sees fit;

(d) Execute in the name of the Indemnitors any
instruments deemed necessary or desirable by the
Company . . . .

(e) Take possession of the Indemnitors' rights, title and
interest, in and to all Contracts . . .

(f) Be subrogated to all the rights, remedies, properties,
funds, securities and receivables of the Indemnitors
on all Contracts or any other contract of Indemnitors
and have the right to offset losses on any Contract or
Bond against proceeds, funds, or property due from
another Contract, Bond or other contract.

8. **Joint and Several Liability**. The obligations of the
Indemnitors hereunder are joint and several. The Company
is authorized to settle with any one or more of the
Indemnitors individually, and without reference to the others,
and such settlement shall not bar or prejudice actions
against or affect the liability of the others.

Dkt. #112-1.


On April 25, 2012, DiPizio entered into a construction contract with the

Erie Canal Harbor Development Corporation ("ECHDC"), for the Erie Canal Inner

Harbor Project. Dkt. #56, ¶ 3. A performance bond and material payment bond (Bond

No. 105594405), was issued by Travelers, as surety, and DiPizio, as principal, to the

ECHDC as obligee. Dkt. #32-1, ¶ 4. The performance bond provides, in relevant part,

that

> Whenever [DiPizio] shall be, and declared by [ECHDC], to be in default under the Contract, [ECHDC], having performed [its] obligations thereunder, the Surety may promptly remedy the default, or shall promptly:
>
> (1) Complete the Contract in accordance with its terms and conditions; or
>
> (2) Obtain a bid or bids for submission to [ECHDC] for completing the Contract in accordance with its terms and conditions . . . .

Dkt. #34-2, p.95.

On May 8, 2013, ECHDC issued a notice of intent to terminate the contract with DiPizio. Dkt. #112, ¶ 20.

On May 13, 2013, DiPizio commenced a lawsuit against the ECHDC in New York State Supreme Court, Erie County (Index No. 602666/2013), seeking an injunction to stop ECHDC from terminating DiPizio's contract. Dkt. #32-1, ¶ 31. Following a hearing, the New York State Supreme Court denied the preliminary injunction on the ground that DiPizio would not suffer irreparable harm inasmuch as it possessed an adequate remedy at law, *to wit*, monetary damages. Dkt. #32-1, ¶ 31 & Dkt. #112-4.

On July 22, 2013, ECHDC terminated the contract with DiPizio and made a claim against Travelers on the performance bond. Dkt. #112-5 & 112-6.

On September 13, 2013, DiPizio commenced a defamation action (Index

No. 801815/2013), against the New York State Urban Development Corporation d/b/a

Empire State Development, the ECHDC, Sam Hoyt, Thomas Dee, and Mark Smith.

Dkt. #30-1, ¶ 16.


Effective September 23, 2013, ECHDC and Travelers entered into a

Takeover Agreement whereby Travelers agreed to complete the remaining work on the

Erie Canal Inner Harbor Project contract.  Dkt. #117-9.  The Takeover Agreement

included a recital that DiPizio, ECHDC and Travelers "reserve all their rights and

defenses regarding the legitimacy of the termination and any damages they have or will

incur which result therefrom."  Dkt. 3117-9, p.2.


By letter dated October 7, 2013, Travelers enclosed a copy of the GAI and

informed the Indemnitors that:

> . . . Travelers has been named as a defendant in a lawsuit
> commenced by CapitalPlus Equity, LLC . . . seeking
> recovery of $1.55 million from Travelers. . . . Based upon
> Travelers' investigation, Travelers does not believe that it is
> liable to CapitalPlus. Nevertheless, pursuant to the GAI (in
> particular, see paragraph 6), Travelers requests that the
> indemnitors deposit collateral security with Travelers in the
> amount of the CapitalPlus claim for $911,400, which is the
> total that Travelers understands that CapitalPlus actually
> advanced to Dreamco.  Said collateral security is to be
> deposited promptly with Travelers.
>
> Finally, as you are aware, Travelers, DiPizio and the ECHDC
> have been involved in three party settlement discussions. It
> now appears that the three way settlement is not imminent
> and, in all likelihood, probably will not happen. Travelers has
> also discussed with the ECHDC and DiPizio an alternative
> settlement whereby Travelers, pursuant to its rights under
> the GAI (in particular, see paragraph 7), would be settling
> the DiPizio claims assigned to Travelers under the GAI in

return for a settlement payment of $2.75 million from the ECHDC (Travelers' best estimate of the amount to be received) and a waiver of liquidated damages of $1.5 million. DiPizio has requested that Travelers not settle the DiPizio claims assigned to Travelers, and Travelers has requested that DiPizio deposit $4.25 million in collateral ($2.75 million plus $1.5 million) in exchange for Travelers not exercising these rights. However, DiPizio has not deposited such collateral and, in fact, has recently commenced legal proceedings to restrain and enjoin the ECHDC from entering into such an alternative settlement with Travelers. Travelers' understanding is that the ECHDC has voluntarily agreed not to enter in such an alternative settlement up to the October 18, 2013 return date of the latest DiPizio motion. This letter sets forth Travelers' demand that, assuming there is no voluntary or legal restraint on the ECHDC entering into such an alternative settlement with Travelers, the indemnitors deposit of [sic] $4.5 million of collateral with Travelers. Otherwise, Travelers will continue its discussions with the ECHDC about Travelers' exercise [sic] its right to settle the assigned claims under the GAI, and such negotiations may result in the actual exercise of such rights.

Dkt. #112-3, p.4.

By Order entered November 1, 2013, Justice Walker enjoined ECHDC from compromising, or taking any action that would effectively compromise DiPizio's claims against ECHDC without prior court approval. Dkt. #112, ¶ 23.

In November of 2013, DiPizio commenced a declaratory judgment action (Index No. 803777/2013), seeking a declaration that the performance bond on the Erie Canal Inner Harbor Project had not been triggered and that ECHDC breached the contract. Dkt. #44-3, p.5.

On July 16, 2014, Travelers commenced this diversity action against

DiPizio and other signatories to the GAI seeking payment on the Erie & Niagara D262047 Project (Bond No. 105594546); Erie County 2013 Capital Overlay Project (Bond No. 105809269); and Niagara County D261076 Project (Bond No. 105135961), and asserting a general claim for reimbursement of expenses on all bonds issued, including Bond No. 105594405 pertaining to the Erie Canal Inner Harbor Project. Dkt. #1.

On August 8, 2014, the New York State Supreme Court, Appellate Division, Fourth Department, ("Appellate Division"), determined that Justice Walker erred in granting DiPizio's motion to enjoin ECHDC from terminating the construction agreement. *DiPizio Constr. Co., Inc. v. Erie Canal Harbor Dev. Corp.*, 120 A.D.3d 909 (4th Dep't 2014).

On August 14, 2014, Travelers intervened as plaintiff in the state court contract and declaratory judgment actions relating to the Erie Canal Inner Harbor Project (Index No. 602666/2013 and Index No. 803777/2013), seeking payment of the excess costs of completion of the contract, estimated at more than $10,000,000.00, from ECHDC.  Dkt. #30-1, ¶ 17.  Travelers alleges that the termination of the contract by ECHDC was improper because DiPizio was entitled to a significant time extension for completion of the contract.  Dkt. #30-2, ¶ 12-14.  Travelers further alleges that DiPizio's delay in completing the remaining work under the Erie Canal Inner Harbor Project contract was attributable to spalling of a concrete slab and related repair necessitated by an ECHDC design error.  Dkt. #30-2, ¶¶ 15-18.  Travelers seeks recovery against ECHDC based upon its rights under the GAI as the assignee and real

party in interest of DiPizio's claims against ECHDC and also based upon its own losses caused by ECHDC following Travelers' takeover of the Erie Canal Inner Harbor Project. Dkt. #35, p.13.

In its answer, DiPizio asserts counterclaims for damages arising from Travelers takeover of the project and refusal to allow DiPizio to complete the contract, as well as from Travelers refusal to issue additional bonds to DiPizio, including tortious interference with DiPizio's contract with ECHDC, gross negligence, and negligence. Dkt. #19.

On November 21, 2014, Travelers amended its complaint in this action to supplement its losses on the bonds set forth in the original complaint and quantify its loss on the Erie Canal Inner Harbor Project as more than $20 million. Dkt. #22. The amended complaint also added claims, pursuant to the GAI, for payment of losses on Bond No. 105809035 pertaining to the Seneca Creek Casino Project; Bond No. 105809279 pertaining to the Meadow Drive Extension Project; and Bond No. 105809189 pertaining to a 2013 Road Reconstruction Project. Dkt. #22. In addition, the amended complaint added defendants and asserted claims for fraudulent conveyance of assets and diversion of trust funds in violation of New York Lien Law. Dkt. #22.

Defendants filed a motion to stay this action pending resolution of the state court actions. Dkt. #22.

Travelers opposed the motion to stay and moved for summary judgement with respect to $1,993,033.32 in payments made pursuant to five bonds as well as a determination of liability with respect to the Erie Canal Inner Harbor Project bond, with damages to be determined upon inquest.  Dkt. #32.

By Decision and Order entered April 24, 2015, Justice Walker determined that DiPizio had defaulted on the GAI and that all remaining claims in the contract, defamation and declaratory judgment actions had been assigned to Travelers, who is the real party in interest for purposes of all claims in the state court actions, *to wit*, 602666/2013 (contract action); 803777/2013 (declaratory judgment action); and 801815/2013 (defamation action).  *DiPizio Constr. Co., Inc. v. Erie Canal Harbor Dev. Corp.*, 55 Misc.3d 1215, 2015 WL 13284897 (Sup. Ct. Erie Cty 2015), *aff'd* 148 A.D.3d 1595 (4th Dep't 2017). More specifically, Justice Walker determined that

> The GAI is unambiguous, and it defined "default" as including "a declaration of Contract default by the obligee or entity for whom a Contract is performed" (GAI, ¶ 2).  Such definition is limited to a mere declaration of default, and does not require a judicial determination that the declaration was correct.

*Id.* at *3.  Justice Walker also determined that DiPizio's failure to reimburse Travelers for net losses of $1,763,230.74 relative to Non-Inner Harbor Projects constituted default under the GAI. *Id.*  Finally, Justice Walker determined that the Takeover Agreement did not supercede the GAI, explaining:

> The GAI is between Travelers and DiPizio.  The Takeover Agreement is between Travelers and [ECHDC], and DiPizio is **not** a party to it.  By the time Travelers and [ECHDC] entered into the Takeover Agreement (in September 2013), DiPizio no longer possessed the Claims; they had **already**

been assigned to Travelers, because DiPizio **previously** committed multiple defaults under the GAI.  Accordingly, notwithstanding the Takeover Agreement's reservation of rights provision, that agreement cannot "un-assign" Claims which DiPizio no longer possessed at the time the reservation was made.

Moreover, Travelers' rights under the GAI (including its right to act as the real party in interest in connection with the Claims) are not the subject of the Takeover Agreement, nor does that agreement address them.  By entering into the Takeover Agreement, Travelers has not waived any rights regarding the GAI . . .

Similarly, the GAI provides that it "can only be modified by a rider in writing" signed by Travelers (GAI, ¶ 17), but the Takeover Agreement does not constitute such a rider.

*Id.* at *7.

By Decision and Order entered May 7, 2015, this Court denied

defendants' motion to stay this action pending resolution of the state court actions,

stating:

Resolution of the state court actions will determine whether DiPizio or ECHDC breached the contract on the Erie Canal Inner Harbor Project and the amount of damages due as a result of that breach, while the instant action will determine Travelers' rights under the General Agreement of Indemnity with respect to claims on multiple bonds. Even if the state court actions determine that DiPizio did not default on the contract with ECHDC, such a finding would not affect DiPizio's liability under an agreement to indemnify against damages incurred by Travelers as surety to ECHDC.

Dkt. #42, p.7.

By Decision and Order entered June 1, 2015, Justice Walker consolidated the state court actions and noted that "since the Court has now determined that Travelers is the assignee and real party in interest of DiPizio's claims against [ECHDC], DiPizio is no longer a plaintiff . . . in these actions." Dkt. #54-1, p.2. As a result, Justice Walker ordered the captions amended to name "Travelers Casualty and Surety Company of America, asserting claims in its own right, and as the assignee and real party in interest of the claims asserted by DiPizio Construction Company, Inc.," as plaintiff. Dkt. #54-1, p.2.

On June 9, 2015, the day before the deadline for responses to Travelers' motion for summary judgment, defendants filed a motion to disqualify Travelers' counsel and stay defendants' time to respond to the summary judgment motion. Dkt. #49. The Court denied so much of the motion as sought to delay the summary judgement motion and subsequently denied the motion to disqualify counsel. Dkt. #51 & Dkt. #60.

By Decision and Order entered July 8, 2015, this Court granted Travelers' motion to amend its complaint to update its losses on the bonds, add a claim for specific performance of the Indemnitors' duties under the collateral security clause of the GAI and to join Rosanne DiPizio, individually and as Trustee of the Bernard DiPizio Family Trust; Daniel F. DiPizio, as Trustee of the DiPizio Trust; Stradtman Park, LLC; Richard P. Boehmer, as Trustee of the L. Boehmer Family Trust; and Castle & Mosey, L.P. a/k/a Castle Mosey, L.P. as defendants on claims seeking to recover losses on the

bonds, set aside and enjoin fraudulent conveyances, enjoin the dissipation of equity in certain assets, recover diverted trust funds under Article 3-A of New York's Lien Law and declare a mortgage interest invalid. Dkt. #61. The amended complaint was filed on July 10, 2015.  Dkt. #62.

On July 30, 2015, this Court issued a Report, Recommendation and Order that Travelers' motion for summary judgment seeking $1,993,033.32 paid pursuant to five payment bonds and a determination of liability on the Erie Canal Inner Harbor Project performance bond, with the amount of damages determined by inquest, be granted against the signatories to the GAI.  Dkt. #68.

On December 23, 2015, the Appellate Division reinstated DiPizio's complaint regarding the lack of a Board vote to terminate the Construction agreement (Index No. 02612/2013), holding that DiPizio had raised a triable issue of fact as to whether the Board of Directors had full knowledge of the material facts relating to DiPizio's termination when they ratified Mr. Dee's actions.  *DiPizio Constr. Co., Inc. v. Erie Canal Harbor Dev. Corp.*, 134 A.D.3d 1418 (4th Dep't 2015).  The Appellate Division further determined that there were triable issues of fact as to whether the President of the Board could terminate the Construction Agreement without formal action by the Board. *Id.*

On March 29, 2016, with objections pending, Judge Arcara recused himself from this proceeding.  Dkt. #101.  The case was ultimately reassigned to Judge

Geraci.

By Order dated April 11, 2016, Justice Walker affirmed his prior

determination

> that there has been a "default" by DiPizio under the GAI
> inasmuch as the GAI expressly provides that a "default"
> includes, *inter alia*, a "declaration of default" by an owner,
> such as [ECHDC] (April 24, 2015 Decision and Order pp. 6-
> 9). A default on a construction contract, like the Contract,
> does not require a judicial determination of default in order
> to trigger the assignment provisions of a surety/indemnity
> contract, like the GAI. All that is required is the owner's
> (here, [ECHDC]) declaration of default (*Id.*, at 6-7).
>
> This Court further held that under the clear and
> unambiguous language of the GAI, all claims that DiPizio
> "had in or growing in any manner out of" its Contract with
> [ECHDC] had been assigned to Travelers (*Id.*, at 10, *see
> also*, *Id*, at 9-14).
>
> The precise same reasoning from the April 24, 2015
> Decision and Order applies equally to the instant matter,
> wherein DiPizio contends that [ECHDC's] termination of the
> Contract itself was a nullity (*see DiPizio*, *supra* ["DiPizio
> commenced this related action seeking a judgment declaring
> that [ECHDC's] notice of intent to terminate the Contract
> (Notice) and its ultimate termination of the Contract were
> nullities and that the parties' Contract remains in full force
> and effect. DiPizio contended that [ECHDC's] Board of
> Directors . . . was required to approve by a majority vote any
> official action to be taken by [ECHDC] and, because the
> Board did not vote on the decision to issue the Notice or to
> terminate the Contract, those actions taken by the Board's
> President were nullities."]).
>
> Accordingly, the instant matter is inextricably intertwined with
> the Contract and has therefore been assigned to Travelers,
> pursuant to the GAI.

Dkt. #121, pp.21-22, *aff'd* 151 A.D.3d 1750 (4th Dep't 2017). As a result, Justice Walker

granted ECHDC's motion for an order declaring Travelers the real party in interest to

the claims asserted.  Dkt. #121, p.22.

On June 21, 2016, the Hon. Frank P. Geraci, Jr., determined, *sua sponte*, that the motion for summary judgment be denied without prejudice because of the filing of the amended complaint. Dkt. #109.

Travelers refiled its motion for summary judgment on September 1, 2016. Dkt. #111.  In support of the motion for summary judgment, Patsy Crowder, Senior Claim Representative for Travelers, affirms that Travelers has sustained net losses of $2,105,829.09 on six performance and payment bonds issued to DiPizio: (1) $810,908.82 pursuant to Bond No. 105594546 relating to the Erie & Niagara D262047 Project; (2) $812,241.08 pursuant to Bond No. 105809269 relating to the Erie County 2013 Capital Overlay Project; (3) $102,426.26 pursuant to Bond No.105135961 relating to the Niagara County D261076 Project; (4) $285,528.61 pursuant to Bond No. 105809189 relating to the Town of West Seneca 2013 Road Reconstruction Project ; (5) $40,701.28 pursuant to Bond. No. 105809279 relating to the Meadow Drive Extension;and  (6) $54,023.04 pursuant to Bond No. 105809035 relating to the Seneca Creek Casino Project.  Dkt. #113.  Included in this documentation is payment of $317,110.83 to Buffalo Crushed Stone pursuant to Bond No. 105594546 relating to the Erie & Niagara D262047 Project (Dkt. #113, ¶¶  9-10 & Dkt. #113-1, pp.2-10), and $102,426.26 to Paul J. Gallo Contracting, Inc. pursuant to Bond No. 105135961 relating to the Niagara County D261076 Project. Dkt. #113, ¶¶ 25-26 & Dkt. #113-1, pp.28-29.

On March 24, 2017, the Appellate Division affirmed Justice Walker's
Decision and Order entered April 24, 2015 determining that Travelers is the real party in
interest for the reasons stated in that decision, adding only that, "to the extent our
decision in *Peerless Ins. Co. v. Talia Constr. Co. . . .* may be construed to provide that
acts constituting bad faith on the part of a surety are restricted to fraud and collusion, it
should instead be read to provide that fraud and collusion are merely examples of such
acts." *DiPizio Constr. Co., Inc. v. Erie Canal Harbor Dev. Corp.*, 148 A.D.3d 1595 (4th
Dep't 2017).

On June 9, 2017, the Appellate Division determined that Justice Walker

> properly determined that, pursuant to the terms of the GAI,
> Travelers is also the real party in interest in this action. We
> conclude that the declaratory relief sought in the instant
> action, *i.e.*, a declaration that the termination of the Contract
> is a nullity because defendant's president lacked authority to
> terminate the Contract, concerns a right or interest of
> DiPizio's that "gr[ew] . . . out of the Contract" between
> DiPizio and defendant, pursuant to the terms of the GAI.
> Thus, the assignment provisions of the GAI are applicable to
> this action, and the court properly determined that Travelers
> is the real party in interest.

*DiPizio Construction Co., Inc. v. Erie Canal Harbor Dev. Corp.*, 151 A.D.3d 1750 (4th
Dep't. 2017), *lv. denied*, 30 N.Y.3d 910 (2018).

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).   A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). The district court must view the evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in that party's favor.  *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Good Faith**

"[U]nder New York law, there is an implied duty of good faith and fair dealing in every contract, and surety bonds are no exception." *U.S. Fid. & Guar. v. Braspetro Oil Servs.*, 369 F.3d 34, 64 (2d Cir. 2004). In the "surety-indemnification context, New York courts have equated 'bad faith' with 'fraud or collusion.'" *Travelers Indem. Co. v. Harrison Constr. Grp. Corp.*, CV 06-4011, 2008 WL 4725970, at * 5 (E.D.N.Y. Oct. 22, 2008), *quoting Peerless Ins. Co. v. Talia Constr. Co., Inc.*, 272 A.D.2d 919, 920 (4th Dep't 2000). Subsequently, the Appellate Division clarified that fraud and collusion are merely examples of acts constituting bad faith. *DiPizio*, 148 A.D.3d 1595. Conversely, New York courts have declared that "[p]ayment is made in good faith if the surety pays the claims 'in the honest belief that it was liable for such claims.'" *Lee v. T.F. DeMilo Corp.*, 29 A.D.3d 867, 868 (2d Dep't 2006), *quoting Maryland Cas. Co. v. Grace,* 292 N.Y. 194, 200 (1944).

**Declaration of Default**

The Indemnitors argue that critical new facts and the Appellate Division's December 23, 2015 decision in *DiPizio Constr. Co., Inc. v. Erie Canal Harbor Dev. Corp.*, 134 A.D.3d 1418 (4th Dep't 2015), distinguish this motion from the prior motion. Dkt. #120, p.4. More specifically, the Indemnitors argue that the GAI cannot have been triggered if Mr. Dee's declaration of default is deemed a nullity because it was not authorized by the ECHDC Board of Directors. Dkt. #120, pp.5 & 10.

Travelers responds that the propriety of the declaration of default is irrelevant to the Indemnitors obligations under the GAI.  Dkt. #122, pp.2-3.  In any event, Travelers notes that Judge Walker subsequently determined that "[a] default on a construction contract . . . does not require a judicial determination of default in order to trigger the assignment provisions of a surety/indemnity contract, like the GAI."  Dkt. #122, p.3.

"It is irrelevant whether [the contractor] . . . actually defaulted on their contracts with the owners, so long as [the surety] acted in good faith in making the payments and completing the performance under the construction contracts."  *Safeco Ins. Co. v. M.E.S., Inc*., 09-CV-3312, 2017 WL 1194730, at * 17  (E.D.N.Y. March 30, 2017), *quoting Merritt-Meridian Constr. Corp*., 975 F. Supp. at 516.  Assurances that the surety "would fulfill its obligations under the bond agreement," and discussions regarding deficiencies related to the project prior to a declaration of default are insufficient to infer bad faith.  *Safeco*, 2017 WL 1194730, at *12 & *15.

In *Federal Ins. Co. v. McKane*, the contractor argued "that there were genuine issues of material fact regarding whether they were in default" so as to call into question the validity of the settlement agreement between the developer and the surety.  312 Fed. Appx 351, 352 (2d Cir. 2008).  The Court of Appeals for the Second Circuit rejected this argument, explaining:

> under the plain language of the General Agreement of Indemnity ("GAI") between [contractor] and [surety], an "event of default" included any declaration that [contractor]

> was in default, regardless of whether such declaration was
> proper. [Developer's] notice of default and subsequent
> termination of [contractor's] contract therefore constituted an
> "event of default" for purposes of the GAI and the district
> court did not err in applying the terms contained therein.

*Id.*

In the instant case, the GAI between Travelers and the Indemnitors provides that default is triggered by, *inter alia*, "a declaration of Contract default by the obligee or entity for whom a Contract is performed." Dkt. #112-1. As it is undisputed that ECHDC terminated the contract with DiPizio and made a claim against Travelers on the bond on July 22, 2013, the default provision of the GAI was triggered. As Justice Walker determined, and the Appellate Division affirmed, the "definition is limited to a mere declaration of default, and does not require a judicial determination that the declaration was correct." *DiPizio,* 2015 WL 13284897, at *3.

**Investigation**

The Indemnitors argue that Travelers failed to investigate to determine whether DiPizio was at fault, which is a breach of its obligation to act in good faith. Dkt. #120, pp.7 & 16-25. More specifically, the Indemnitors argue that "Travelers had all the information it needed to reject the claim but failed to analyze it until long after Travelers signed the Takeover Agreement in September 2013." Dkt. #120, p.24.

Travelers notes that Judge Walker has rejected arguments that Travelers acted in bad faith. Dkt. #122, pp.9-10. In any event, Travelers argues that the

Indemnitors have failed to allege any breach of any duty imposed by the GAI. Dkt. #122, pp.10-11.

"[A] surety's failure to investigate the claim fully or pursue a viable defense does not constitute bad faith." *Hanover Ins. Co. v. D'Angelo*, CV 13-4301, 2016 WL 4402251, at *7 (E.D.N.Y. July 18, 2016) (collecting cases). Thus, "New York courts routinely reject failure-to-investigate challenges to the enforcement of indemnification agreements." *Safeco Ins. Co. v. M.E.S., Inc.*, 09-CV-3312, 2017 WL 1194730, at *17 (E.D.N.Y. March 30, 2017) (collecting cases). To hold otherwise "would undermine the entire surety industry, forcing sureties to engage in protracted and often costly investigations into the minutia of each claim under a bond and as to every potential defense asserted by a defaulting contractor, on the threat that should they fail to do so, the contractor could avoid its indemnification responsibilities." *Id.*

**Takeover Agreement**

The Indemnitors argue that DiPizio's right to contest the propriety of the termination was retained by virtue of the takeover agreement. Dkt. #120, p.11.

Travelers responds that the Takeover Agreement does not alter the terms of the GAI. Dkt. #122, pp.4-5. Travelers notes that it entered in to the Takeover Agreement subject to a full reservation of rights and is suing ECHDC for damages as assignee of DiPizio. Dkt. #122, p.7.

This Court agrees with Justice Walker's determination, affirmed by the

Fourth Department that:

> The GAI is between Travelers and DiPizio. The Takeover Agreement is between Travelers and [ECHDC], and DiPizio is **not** a party to it.  By the time Travelers and [ECHDC] entered into the Takeover Agreement (in September 2013), DiPizio no longer possessed the Claims; they had **already** been assigned to Travelers, because DiPizio **previously** committed multiple defaults under the GAI.  Accordingly, notwithstanding the Takeover Agreement's reservation of rights provision, that agreement cannot "un-assign" Claims which DiPizio no longer possessed at the time the reservation was made.
>
> Moreover, Travelers' rights under the GAI (including its right to act as the real party in interest in connection with the Claims) are not the subject of the Takeover Agreement, nor does that agreement address them.  By entering into the Takeover Agreement, Travelers has not waived any rights regarding the GAI . . .
>
> Similarly, the GAI provides that it "can only be modified by a rider in writing" signed by Travelers (GAI, ¶ 17), but the Takeover Agreement does not constitute such a rider.

*DiPizio,* 2015 WL 13284897, at *9.  Moreover, as this Court previously recognized,

> Resolution of the state court actions will determine whether DiPizio or ECHDC breached the contract on the Erie Canal Inner Harbor Project and the amount of damages due as a result of that breach, while the instant action will determine Travelers' rights under the General Agreement of Indemnity with respect to claims on multiple bonds. Even if the state court actions determine that DiPizio did not default on the contract with ECHDC, such a finding would not affect DiPizio's liability under an agreement to indemnify against damages incurred by Travelers as surety to ECHDC.

Dkt. #42, p.7.  In sum, DiPizio's claims against ECHDC do not affect Travelers' rights

against DiPizio and the Indemnitors under the GAI.

**Selection of Completion Contractor**

The Indemnitors assert that it was bad faith for Travelers to select the highest bidder to complete the project.  Dkt. #120, pp.25-26.

Travelers responds that it was reasonable to chose Pike over two other contractors, each of which had been involved as a subcontractor to DiPizio, and notes that although Pike presented the highest bid, they also offered greater staffing and acceptance of more general conditions.  Dkt. #122, p.11.

Following the declaration of default by ECHDC, Travelers possessed "the right in its sole discretion to . . . [t]ake possession of the work under any Contract and to complete said Contract, or cause, or consent, to the completion thereof."  Dkt. #112-1. Although the Indemnitors object to the cost of the completion contract with Pike,[1] they offer no evidence to suggest that Travelers chose Pike in bad faith.  "Conclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety seeking to enforce an indemnification agreement. *Merritt*, 975 F. Supp. at 518.  Moreover, "[a] surety does not engage in bad faith by exercising its contractual rights."  *DiPizio*, 2015 WL 13284897, at *8.

**Non-Inner Harbor Bonds**

DiPzio disputes whether certain bills were properly due and owing

---

[1] Such objection is more appropriately addressed to the amount of damages Travelers is entitled to recover from DiPizio under the Inner Harbor Bonds.

because they were "pay when paid contracts" or they were contested.  Dkt. #120, p.6.

DiPizio specifically challenges payment to Buffalo Crushed Stone in the amount of

$317,110.83 and payment to Gallo in the amount of $102,426.26. Dkt. #120, pp.14-16.

In addition, DiPizio argues that it had an agreement that DiPizio would reimburse

Travelers for certain claims when DiPizio recovered money from ECHDC on DiPizio's

Inner Harbor Project claim.  Dkt. #120, p.14. DiPizio also argues that Travelers has not

disclosed the settlement of *DiPizio v. Niagara Frontier Transp. Auth*., Index No. 2009-

1203, which precludes determination of Travelers' monetary claim.  Dkt. #120, p.6.

       Travelers responds that DiPizio has not presented evidence of "pay when

paid" clauses in the contracts between DiPizio and the claimants and argues that such

clauses violate public policy as applied to the facts presented.  Dkt. #122, p.5. Travelers

also contends that the GAI cannot be superceded by any purported understanding that

DiPizio would reimburse Travelers for its non-Inner Harbor losses from potential

recoveries from ECHDC.  Dkt. #122, p.5.  Travelers further responds that it was within

its rights to settle claims regardless of DiPizio's actual liability.  Dkt. #122, p.6. Finally,

Travelers responds that the $50,000 settlement with the NFTA relating to Bond No.

104234560 was not approved until July 13, 2015 and was disclosed in response to the

objections to this Court's Report, Recommendation and Order, with Travelers advising

the Indemnitors that it would apply the settlement against its losses on the Inner Harbor

Project.  Dkt. #95, p.8; Dkt. #96, p.59; Dkt. #121, ¶ 25 & Dkt. #122, p.6.

       Under well-settled New York case law, where a surety and its principal

have executed an overarching indemnity agreement giving the surety complete

discretion whether to settle or defend claims pursuant to underlying bonds, such a provision means that the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount, and this rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee.  *Travelers Indem. Co. v. Harrison Constr. Grp. Corp.*, CV 06-4011, 2008 WL 4725970, at *3 (E.D.N.Y. Oct. 22, 2008), *quoting Frontier Ins. Co. v. Renewal Arts Constr. Corp.*, 12 A.D.3d 891, 892 (3rd Dep't 2004).  "Sureties enjoy such discretion to settle claims because of the important function they serve in the construction industry, and because the economic incentives motivating them are a sufficient safeguard against payment of invalid claims."  *Merritt*, 975 F. Supp. at 516.

Pursuant to the GAI, the Indemnitors are required to indemnify Travelers for DiPizio's "failure to make payment of a properly due and owing bill in connection with any Contract."  Dkt. #34-1, p.15.  Travelers has submitted sworn statements of net payments totaling $2,105,829.09.  Dkt. #113, ¶ 3.  Thus, Travelers has satisfied its initial burden "to submit proof of payments, after which the burden shifts to [the Indemnitors] to show bad faith."  *Safeco*, 2017 WL 1194730, at *12.

The Indemnitors' objections that some of these payments were not properly due are rejected, as "'pay-when-paid' provisions, which make the general contractor's obligation to pay its subcontractors contingent upon the general contractor's receipt of payment from the owner, are 'void and unenforceable as contrary to public policy' in New York."  *Innovative Design & Bldg Servs., LLC v. Arch  Ins. Co.,*

No 12-cv-5474, 2014 WL 4770098, at *20 (S.D.N.Y. Sept. 23, 2014), *quoting West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 87 N.Y.2d 148, 158 (1995).  As to the payment to Buffalo Crushed Stone in the amount of $317,110.83, the correspondence between DiPizio and Travelers does not include any objection to the amount of this claim, but only seeks to make payment to Buffalo Crushed Stone, as well as other contractors, once it received judgement on its state court action regarding the Inner Harbor Project. Dkt. #113-1, pp. 2-6 & 8.  Pursuant to the GAI, however, Travelers was "entitled to immediate reimbursement for any and all payments."  Dkt. #112-1.

         As to the payment to Gallo, DiPizio urged Travelers to deny Gallo's claims because Gallo's work on the bridge decks was rejected by the Department of Transportation due to "cracking and use of the wrong material . . . requiring extensive work by Gallo to remediate the bridge decking."  Dkt. #118-4, p.2.  DiPizio argued that "Gallo must absorb all costs associated with remediating Gallo's original work that the DOT would not pay."  Dkt. #118-4, p.3.  DiPizio argued that, "by asserting the instant claim against [DiPizio's] payment bond, Gallo seemingly seeks reimbursement from [DiPizio] for the portion of Gallo's claim the DOT would not approve, even though it was Gallo's work that had to be remediated."  Dkt. #118-4, p.4.  Upon review of Gallo's claim and DiPizio's objection, Travelers provided DiPizio with its calculation that $102,426.26 of the $249,473.04 in dispute was due to Gallo.  Dkt. #112, ¶ 11(ii) & Dkt. #113-1, p.28.  This analysis is well within Travelers' "right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or

appealed, and its determination shall be final, binding and conclusive upon the Indemnitors." Dkt. #112-1.  A decision to settle claims in the face of potential defenses or objections from the contractor "is not evidence of bad faith."  *Merritt*, 975 F. Supp. at 518 & 519.

**Inner Harbor Bonds**

As to the Inner Harbor Bonds, for the reasons set forth above, it is recommended that Travelers be granted summary judgment holding the Indemnitors liable under the GAI for any reasonable, good faith payments made on the Erie Canal Inner Harbor Project as determined by inquest at a later date.

**Collateral Security**

Travelers argues that it is entitled to summary judgment in the amount of $4.25 million on its demand for collateral as provided in paragraph six of the Indemnity Agreement.  Dkt. #114, p.17.  Travelers argues that the Indemnitors should not be permitted to further dissipate their assets before Travelers can collect judgment against them.  Dkt. #114, p.18.

The Indemnitors argue that Travelers never demanded that DiPizio post $4.25 million in collateral pursuant to the GAI, but were instead demanding payment to avoid settlement of DiPizio's claims against ECHDC.  Dkt. #120, pp.7 & 16-17.

Travelers replies that it demanded the $4.25 million as collateral in its letter dated October 7, 2013.  Dkt. #122, p.7 & Dkt. #112-3, p.4.

The GAI obligates that Indemnitors "to pay the Company, upon demand, an amount sufficient to discharge any claim or demand made against the Company on any Bond," to "be used by the Company to pay such claim or be held by the Company as collateral security against any loss, claim, liability or unpaid premium on any Bond." Dkt. #112-1.  By letter dated October 7, 2013, Travelers informed DiPizio of settlement negotiations with ECHDC and demanded that, absent DiPizio's consent to such a settlement, it deposit the amount that could secure settlement of the claim, *to wit*, $4.25 million, as collateral. Dkt. #112-3, p.4.  In the paragraph previous to this demand, Travelers discussed another claim against DiPizio  for which it demanded DiPizio deposit the amount in dispute with Travelers as collateral and specifically referenced the paragraph of the GAI relating to collateral security.  Dkt. #112-3, p.4.  Contrary to DiPizio's argument, this is sufficient to constitute a demand for $4.25 in collateral as provided by the GAI.  *See American Motorists Ins. Co. v. Pennsylvania Beads Corp*., 983 F. Supp. 437, 440  (S.D.N.Y. 1997) (enforcing Indemnity Agreement provision requiring security to be posted as collateral in the amount demanded against the bond). Accordingly, it is recommended that DiPizio be required to deposit $4.25 million in collateral on the Inner Harbor Project bonds.

**Judgment**

Travelers seeks final judgment on its claims for reimbursement on the non-inner harbor bonds as set forth in the first through seventh causes of action and on the eleventh cause of action seeking collateral security on the inner harbor project bonds.  Dkt. #114, pp.19-21.  Travelers argues that a failure to do so would encourage

-28-

sureties to file separate lawsuits for every remedy available to it so as to avoid delay in enforcement of their contracts.  Dkt. #114, p.23.

Rule 54(b) of the Federal Rules of Civil Procedure provides that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  In assessing whether there are no just reasons for delay, the district court must take into account both judicial administrative interests, *i.e.*, "historic federal policy against piecemeal appeals," and the equities involved. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980).  With respect to the former, the district court should consider whether the claims "were separate from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."  *Id.* "The determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court and will be set aside only for an abuse of discretion."  *Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1991).

In the instant case, the Indemnitors' obligations under the bonds present distinct legal issues from the remaining claims seeking payment of attorneys' fees and recovery of fraudulent conveyances and diverted trust funds which will not risk repetitive appellate issues.  As to the equities, the terms of the GAI are clear that the surety is entitled to "immediate reimbursement" and payment "upon demand" of collateral

security in an amount sufficient to discharge any claim or demand made against the Travelers' bonds. Dkt. #112-1. Continued delay in enforcement of the terms set forth in the GAI constitutes a real and ongoing injury to Travelers as it has paid out millions of dollars to claimants and this case has already been pending more than three years.  As Travelers argues, denial of final judgment would also encourage sureties to pursue separate actions in future cases, which would undermine judicial efficiency. Accordingly, it is recommended that final judgment be entered with respect to the first through seventh and eleventh causes of action.


## CONCLUSION

For the foregoing reasons, it is recommended that Travelers' motion for summary judgment (Dkt. #111), seeking reimbursement of $2,105,829.09 paid pursuant to six payment bonds as claimed in the first through seventh causes of action, plus prejudgment interest of 9% per annum from the dates of payment, and payment of $4.25 million as collateral security as sought in the eleventh cause of action be granted and that a final judgment be entered against the Indemnitors with respect to these claims in accordance with Fed. R. Civ. P. 54(b).  It is further recommended that a determination of liability on the Erie Canal Inner Harbor Project performance bond, with the amount of damages determined by inquest, be granted against the Indemnitors with respect to the eight and ninth causes of action.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

-31-

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**    **Buffalo, New York**
              **March 12, 2018**

                                    _s/ H. Kenneth Schroeder, Jr._
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**